**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joaquin RAMOS, Defendant-Appellant.**

**No. 328, Docket 25556.**

United States Court of Appeals Second Circuit.

Argued June 8, 1959.

Decided July 15, 1959.

Frederick B. Terens, Mineola, N. Y., for defendant-appellant.

Charles L. Stewart, Asst. U. S. Atty. for the E. D. of New York, Brooklyn, N. Y. (Cornelius W. Wickersham, Jr., U. S. Attorney, E. D. N. Y., Brooklyn, N. Y., on the brief), for appellee.

Before HINCKS and LUMBARD, Circuit Judges, and SMITH, District Judge.

HINCKS, Circuit Judge.

Ramos was charged, in three counts of an indictment, with the sale of narcotics in violation of 26 U.S.C.A. §§ 4704(a), 4705(a) and 21 U.S.C.A. § 174; and on a fourth count with participation in a conspiracy to sell narcotics in violation of 21

U.S.C.A. § 174. He was tried, together with two codefendants, Di Buono and Cronin, by a jury in the District Court for the Eastern District of New York, Rayfiel, J. All defendants were convicted, Ramos on all four counts, and he appeals.[1]

■■ The appellant contends that a fair trial was prevented by inflammatory comments by the prosecutor in his summation. We do not agree. It is true that the prosecutor, in the course of his summation, referred to traffic in narcotics as "a dirty business," a "vicious business," a "sneaky business," and as "a vicious racket," and referred to the purchase price of three ounces of heroin as "representing $1,265 worth of human degradation." But the comments complained of comprised only six lines (in the typed transcript) interspersed throughout a 24 page summation the rest of which was devoted to a thorough review of the facts and fair argument thereon. Moreover, the context suggests that several of the comments were obviously made to mitigate prejudice against the Government for its use, in the prosecution of the case, of informers and undercover men whose credibility had been savagely attacked by the defense. Cf. United States v. De Vasto, 2 Cir., 52 F.2d 26, 30, 78 A.L.R. 336, certiorari denied 284 U.S. 678, 52 S.Ct. 138, 76 L.Ed. 573; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240, 242, 60 S.Ct. 811, 84 L.Ed. 1129; Lawn v. United States, 355 U.S. 339, 359, 360, 78 S.Ct. 311, 2 L.Ed.2d 321. And we think it not improper for Government counsel in the prosecution of such a case, at least within reasonable limitations, to emphasize the importance of the case by calling attention to the unsavory nature and the social consequences of illicit traffic in narcotics—consequences far more serious than those flowing, for instance, from illicit traffic in lottery tickets or in untaxed liquor. Indeed, counsel for a co-defendant in his summation sought the jury to base an inference on his assertion that a sale of narcotics was "one of the most heinous crimes that could be committed." And in his charge the judge well said:

"Don't let your verdict reflect sympathy, and of course, don't let it reflect prejudice against the individuals involved or the nature of the crime or anything else. Something has been said about narcotics here. All of us know that narcotics are something which are a curse on society, but these men are not responsible for that. These men are charged with committing a particular crime, and it would be unfair to them, undemocratic and unjust, to allow anything to enter into your consideration but the facts in this case, and nothing else."

The overwhelming predominance in the prosecutor's summation was stress on the details of the evidence and the reasoned inferences to be drawn therefrom. And it is not wholly without significance that of the comments now complained of several passed without objection at the time. United States v. Kyle, 2 Cir., 257 F.2d 559, 564. Appraised against the background of the trial, the whole summation and the judge's charge, the fleeting passages complained of, we feel sure, were not intended, or effective, as appeals to passion or prejudice and did not vitiate the fairness of the trial. Cf. Di Carlo v. United States, 2 Cir., 6 F.2d 364; Ballard v. United States, 9 Cir., 152 F.2d 941, 944, reversed on other grounds 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181; United States v. Markham, 7 Cir., 191 F.2d 936. The cases cited by the appellant to this point we think distinguishable on their facts, e.g., Viereck v. United States, 318 U.S. 236, 247, 248, 63 S.Ct. 561, 87 L.Ed. 734; Steele v. United States, 5 Cir., 222 F.2d 628.

---

1. The district court denied motions for leave to appeal *in forma pauperis*, United States v. Ramos, D.C., 158 F. Supp. 825. Subsequently leave so to appeal was granted by another panel of this court and Frederick B. Terens, of Mineola, New York, was assigned by the court to prosecute the appeal. The court is grateful for his skillful discharge of this assignment.

■ The appellant also claims prejudice because in the prosecutor's summation there were assertions of fact without support in the evidence. Each of these comments, also, we have examined against the record and think the criticisms of them without substance: that there was enough evidence to warrant the comment. Once the prosecutor said: "I later found out what was going on * * *" This in context plainly referred to evidence that shortly before the trial the prosecutor had learned of an attempt by Di Buono to suborn the testimony of Pepitone, a Government witness. And shortly thereafter the prosecutor said in connection with the attempted subornation: "When that came out, it was my duty to stop what would otherwise have been an additional crime in this case * * *" The comment was obviously referable to and explanatory of the prosecutor's action in causing a listening device to be installed in Pepitone's bar, through which his conversation with Di Buono was overheard. Whether the "additional crime" referred to was subornation of perjury or a plan to shoot the witness, is not clear. But plainly, if the Government's witness was to be believed, one at least of the defendants was attempting to obstruct justice and we think it not improper for the prosecutor to say that it became his duty to interpose. Errors based on other instances of comment falling within this category have even less substance.

■ The appellant also claims that it was erroneous to receive in evidence testimony of the Government agent, Hunt, who had overheard a conversation between the defendant Di Buono and the Government witness Pepitone. The conversation occurred on the eve of trial after Ramos had been arrested. Certain of the statements then made by Di Buono incriminated Ramos as well as Di Buono. But pursuant to request made by Ramos' counsel, the judge said: "Strike out the reference to the defendant Ramos * *

and disregard that." The evidence was clearly admissible against the defendant-declarant Di Buono, McCormick, Evidence, § 250 (1954), and in view of the specific admonition to the jury to disregard the impact of the evidence on Ramos, its admission was not an error of which Ramos may complain. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278; United States v. De Fillo, 2 Cir., 257 F.2d 835.

■ In one instance, however, testimony inadmissible against Ramos was received, over objection, without a restrictive instruction. Pepitone, when called by the Government to give his account of his overheard conversation with Di Buono, testified that Di Buono, in an effort to suppress his testimony, told him Ramos wanted to send someone "to take a shot at me." [2] Upon objection, the trial judge instructed the jury that the testimony was not binding against Cronin, a codefendant, but failed to give a requested caution that it was equally inapplicable to Ramos. This ruling was made in the belief—mistaken, as the record shows —that it was Cronin—not Ramos—who had been thus mentioned by Di Buono in Pepitone's testimony. Indeed, the judge expressly, but mistakenly, said, "his name [Ramos] was not mentioned" in Di Buono's conversation with Pepitone. However, the jurors had been instructed that they must be guided by their own recollection of the evidence—not the recollection of the judge or of counsel. Thus the net effect of the incident was that the jury heard it said that Ramos had threatened to take a shot at Pepitone unless he would falsify his testimony in Ramos' favor, and had heard the judge pass by a request that this highly incriminating statement was not to be considered against Ramos. Clearly this was error. It is true that before the Government agent, Hunt, the day before had been allowed to testify about this overheard conversation, the judge had admonished the jury: "It will be understood, ladies

2. The agent Hunt had testified the day before Pepitone was called that he had overheard this conversation, but his version did not include any mention of this threatened shooting.

and gentlemen, that will be binding only upon the defendant Di Buono, not on either of the other defendants." But especially in view of the judge's failure on request to repeat the caution the next day in connection with Pepitone's testimony as to the conversation, we cannot assume that the jury understood that the caution as to Hunt's testimony was applicable also to Pepitone's. Hunt, unlike Pepitone, had not been a visible, active participant in the conversation. This difference the jury may have thought important—if indeed they even considered the applicability of the earlier caution to Pepitone's testimony.

Moreover, we think the error was one so deeply prejudicial that it falls within the rule of such cases as Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; United States v. Sansone, 2 Cir., 206 F.2d 86; Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077; Sang Soon Sur v. United States, 9 Cir., 167 F.2d 431. Appraising the gravity of the error in the light of the trial record, it is plain to see that the testimony of the narcotics agents, if believed, would have amply supported Ramos' conviction. But the Government, apparently because unwilling to rest its case on these witnesses, called Pepitone, the manager of a bar and grill, who had put the agents in touch with Cronin and Di Buono. Pepitone, when called, failed to corroborate the testimony of the Government agent of a payment to Ramos made in Pepitone's bar: he insisted that he didn't know Ramos. It was not until he was examined about his conversation with Di Buono that he implicated Ramos and then only by his hearsay declaration which was inadmissible as against Ramos.

Against this setting, we are "left in grave doubt as to whether the error [permitting Pepitone to say, without a restrictive limitation, that he had been told by Di Buono that Ramos had threatened to shoot him] had substantial influence in bringing about a verdict."[3] To be

sure, the error was plainly due to the inadvertence of the judge. Doubtless it would have been avoided if the prosecutor had joined with Ramos' counsel in requesting a limitation upon the applicability of the incriminating hearsay. But these considerations do not insulate the appellant from the effect of the error. And so, although, except for this one inadvertent error, the judge had been scrupulously fair throughout the trial, the conviction must be

Reversed and remanded.

---

3. This is the test approved in Krulewitch v. United States, supra.