128 N.J. Super. 94 (1974)
319 A.2d 232
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN J. KENNY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1974.
Decided April 5, 1974.
*96 Before Judges HALPERN, MATTHEWS and BISCHOFF.
Mr. Donald A. Robinson argued the cause for appellant (Messrs. Robinson, Wayne & Greenberg, attorneys; Messrs. Donald A. Robinson, Stuart M. Gladstone and Ronald J. Riccio, on the brief).
*97 Mr. Alfred J. Luciani argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. George F. Kugler, Jr., former Attorney General of New Jersey; Messrs. Edward Roy Rosen and David S. Baime, Deputy Attorneys General, of counsel; and Messrs. Edward Roy Rosen, David S. Baime, John DeCicco, Robert J. Genatt, Alfred J. Luciani, George Henningsen and L. Steven Pessin, Deputy Attorneys General, on the brief).
The opinion of the court was delivered by BISCHOFF, J.A.D.
Defendant John J. Kenny appeals his conviction of the violation of N.J.S.A. 2A:85-1 (misconduct in office) and N.J.S.A. 2A:105-1 (unlawful taking of money for the performance of duties) and the sentences imposed thereon. The fundamental issue presented by this appeal is whether a valid grant of transactional immunity by the United States Attorney in the United States District Court effectively immunized defendant from conviction or punishment for the crimes charged.
A statement of the lengthy and complex procedural history is necessary to an understanding of the issues presented.
On September 15, 1970 a state grand jury returned an indictment in two counts charging defendant with unlawfully taking money while in office for the performance of his duties. The charges alleged that in late 1966 defendant, then chairman of the Hudson County Board of Freeholders, received a bribe of $50,000 from four men named Reinauer and one named Schiffman, principals of the Reinauer Land Company, and Hyman Mack, president of the Mackman Realty Corporation, in order that defendant would use his influence and his position to have the Hudson County Board of Freeholders change or modify certain restrictions contained in a recorded deed between the Reinauer Land Company and the county.
On November 15, 1970 the federal grand jury for the District of New Jersey returned an indictment containing *98 34 counts against defendant and 11 others. The federal charges involved shakedowns of various contractors who sought construction contracts in Hudson County and Jersey City during the period commencing February 14, 1963, down to the time of the indictment. The federal charges did not in any way involve the Reinauer deed transaction.
On May 14, 1971 Kenny was severed from the federal indictment on application of the United States Attorney. Later, on May 19, 1971, the United States Attorney notified the New Jersey Attorney General that Kenny was to be granted transactional immunity and compelled to testify in the forthcoming federal trial. The letter of notification reads in part as follows:
As I advised you in person and telephonically, it was the personal desire and direction of the Attorney General of the United States, John N. Mitchell, that we speak to you and advise you that it was in the national interest that John J. Kenny be compelled to testify in this federal case and be granted immunity from prosecution concerning any matter upon which testimony touched. It was Mr. Mitchell's desire that you be notified inasmuch as it seemed clear to us that any immunity thus conveyed by the United States Courts would bind the State under the supremacy clause and could possibly prejudice your existing state indictment against John J. Kenny. * * *
Thus, by us making every careful effort to limit his direct examination, we hope to achieve for you the result which you wish as exemplified by your letter of May 17, 1971. However, one further problem faces us. As I told you during our telephone conversation, there is no practical way in which I can limit cross-examination of defense counsel and, of course, we must recognize that he will be immunized just as fully to his cross-examination as he will be to his direct. Inasmuch as I cannot see how I, as the Chief federal law enforcement officer of this district, can possibly approach or enter into any kind of agreement with counsel for defendants such as these, it seems to me that we will have to take our chances and hope for the best.
On May 24, 1971, during the trial of the federal court indictments, Kenny was called to the stand and asked the following question by the United States Attorney:
Mr. Kenny, between on or about November 1, 1963, and continuing thereafter until the very date you were indicted by the United States Grand Jury did you conspire with the defendants now on trial here *99 before this Court, particularly John V. Kenny, Thomas Whelan, Thomas Flaherty, Walter Wolfe, William Sternkopf, Jr., Fred Kropke, Joseph Stapleton, Philip Kunz, and Bernard Murphy to violate various laws of the United States Congress?
Kenny invoked his Fifth Amendment privilege against self-incrimination, as well as his right to remain silent under New Jersey law, and refused to answer the question.
At this time the United States Attorney stated in open court that he had conferred with John N. Mitchell, Attorney General of the United States, and the Assistant Attorney General in charge of the Criminal Division, and Mitchell had advised it was his belief that it was in the national interest that Kenny be granted immunity so that he could testify at the trial. He continued and stated it was also his belief, opinion and judgment that it was in the national interest that the witness be directed to testify, and asked the federal trial judge "to direct [the] witness to answer the questions * * * asked and to thereby confer the full transactional immunity provided for by Sec. 2514 of Title 18 U.S. Code."[1]
*100 The court informed Kenny he was being granted full transactional immunity and he was directed to answer the questions. Kenny then answered "yes" to the question posed and other similar questions put to him during the course of the trial.
On direct examination the United States Attorney did not ask any questions relating to matters included within the state indictment. The testimony given by Kenny on direct examination was damaging to the other defendants. One of the defendants was represented by Walter D. Van Riper and a part of his cross-examination of Kenny is the storm center of this appeal. The pertinent part follows:
Q. Do you know B. Frank Reinauer?
A. Yes, I know Frank Reinauer.
Q. Do you know Frank Reinauer the II?
A. I know Frank  I know him to speak of because he was named in the indictment.
Q. I asked you if you knew him?
A. Not to speak to.
Q. Do you know Gordon S. Reinauer?
A. Not to speak to.
Q. Charles W. Reinauer?
A. Not to speak to.
Q. Do you know Max Schiffman?
A. Not to speak to.
Q. Do you know Hyman Mack?
A. Not to speak to him.
THE WITNESS: May I talk on that indictment, Judge?
MR. VAN RIPER: I will give you an opportunity.
THE COURT: Wait for a question.
Q. Did you shake down or attempt to shake down those men for $50,000 while you were Director of the Board of Freeholders?

*101 A. I didn't, but Angelo Sarubbi did and he brought me the money.

Q. You got the money?
A. I got the $50,000 in the bag and I turned it over to Joe Stapleton.
Q. And the money was for the Board of Freeholders under your direction, and you got the Board of Freeholders to do something which it otherwise wouldn't have done?
A. I asked him to do it.
Q. It was a bribe?
A. Yes.
No objection to these questions was made by any of the attorneys at counsel table. Thereafter, the attorney for another defendant, as well as the trial judge, interrogated defendant on the same subject matter.
Defendants other than John J. Kenny were convicted in the trial in the federal court. On September 9, 1971, after conclusion of the trial, the trial judge issued a judgment of immunity and permanently enjoined the State from continuing to prosecute Kenny under the indictments involved herein.
The State appealed this injunctive order to the Third Circuit Court of Appeals which reversed the injunctive portion of the judgment of immunity and said in the course of its opinion:
The facts of this case did not warrant the district court in enjoining the pending state prosecution against defendant. [Citations omitted] Rather, the court was required to leave defendant to assert his immunity granted pursuant to § 2514 as a defense to the state criminal prosecution. [U.S. v. Kenny, 462 F.2d 1230, 1233 1972]
Thereafter, Kenny moved in the state court to dismiss his indictment, asserting his immunity defense. That motion was denied. Leave to appeal the denial was refused by both this court and subsequently by the Supreme Court. A separate application for injunctive relief was made to the United States District Court and denied. Prior to the start of the trial the defense of immunity was again asserted in the state court and rejected. The trial and subsequent conviction of Kenny followed.

*102 I
Defendant appeals, contending that the grant of transactional immunity in the United States District Court immunized him from prosecution and conviction or, in the alternative, from punishment for the crimes charged in the state indictment.
Defendant first argues that the state court must give full faith and credit to the judgment of immunity entered in the United States District Court on August 30, 1971. That judgment provides in pertinent part as follows:
* * * [T]hat pursuant to 18 U.S.C. 2514 the witness John J. Kenny shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he was compelled to testify or produce evidence, in any Court.
This judgment does not provide that testimony given by Kenny in the federal court on the subject matter of the state indictment was, in fact, compelled. Indeed, the judgment requires a determination of compulsion before it can be implemented. For this reason we pass this argument and reach the heart of the matter  a consideration of the nature and scope of the immunity granted and whether defendant's testimony was compelled or volunteered.
While the State concedes that a valid grant of transactional immunity under 18 U.S.C. § 2514 is binding on state courts, it contends that the conviction and sentence of defendant should be affirmed. The State argues first that the scope of a grant of transactional immunity is vested by statute in the Attorney General of the United States and cannot be enlarged by the courts. It further contends that the extent of the grant is controlled by the areas about which the Government needs information, and advances and "exchange" theory whereby the United States Government cannot be expected to pay in a grant of immunity for any more information than it was seeking or could reasonably expect to receive. Thus, the argument continues, the United *103 States Attorney, in his direct examination of an immunized witness, covers the matters which he deems necessary and proper, and this interrogation circumscribes the outermost limits of the transactional immunity. It is further contended that if a witness on cross-examination is compelled to answer questions beyond the scope of the direct examination, such compelled answers are protected by "a use plus derivative use" or a "use plus fruits" immunity, and not by the broader transactional immunity.
The State misconceives the nature and extent of immunity conferred by the statute. The United States Supreme Court, in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), reviewed the reason behind a grant of immunity and pointed out that the legitimate demands of a government to compel a citizen to testify must be accommodated to the Fifth Amendment privilege against compulsory incrimination. Any statute which authorizes a grant of immunity in exchange for incriminating testimony must offer a protection at least coextensive with the scope of the privilege against self-incrimination. It was there held that this statute [18 U.S.C. § 2514] provides such protection for witnesses and more:
While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. [at 453, 92 S.Ct. at 1661, 32 L.Ed.2d at 222]
Although stated in a dissenting opinion, Justice Brennan has accurately defined the scope of transactional immunity in Piccirillo v. New York, 400 U.S. 548, 568-569, 91 S.Ct. 520, 531, 27 L.Ed.2d 596 (1971), as follows:
* * * It provides the individual with an assurance that he is not testifying about matters for which he may later be prosecuted. * * * The sole question presented to a court is whether the subsequent prosecution is related to the substance of the compelled testimony.
*104 The New Jersey Supreme Court has similarly defined the scope of transactional immunity. In In re Zicarelli, 55 N.J. 249, 265 (1970), aff'd 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972), the court said that transactional immunity bars "prosecution for the offense to which the compelled testimony relates." Accord, Kastigar v. United States, supra, 406 U.S. at 453, 92 S.Ct. at 1661, 32 L.Ed.2d at 222.
The purpose behind such a broad grant of immunity is to give complete freedom of mind to a witness so that he will give his utmost cooperation and disclose the complete truth on behalf of the government when called to testify. Transactional immunity seeks to insure that the witness will completely disgorge himself of all details known to him concerning criminal activities about which he is interrogated, whether he is a participant or not. The very purpose of this statute would be defeated by an interpretation which qualified the transactional immunity to those subject matters covered during direct examination.
In this case the United States Attorney General, after consideration of the case and in the exercise of his judgment, was willing to forego a possibility of obtaining a conviction of defendant Kenny in exchange for a probability of the conviction of all other defendants. His judgment was vindicated, for those convictions were obtained.
It is thus seen that it matters not whether the testimony of the witness is elicited on direct examination, cross-examination, or by the court. The only inquiry which need be made to determine whether the witness is immunized by the grant of transactional immunity is whether a subsequent prosecution is related to the compelled testimony. It naturally follows that even though the United States Attorney, or even the court for that matter, did not intend for the compelled testimony to go beyond matters then being tried, if the testimony, in fact, does spill over into other fields and if it is compelled, the transactional immunity applies and may bring other criminal activity of the witness under the umbrella *105 of the immunity. While the original decision to seek an order directing a witness to testify must emanate from the Attorney General, once a person has been granted transactional immunity and has been directed by the court to testify, he is not solely dependent upon the integrity or good faith of the prosecutorial authority for the preservation of his rights. Kastigar v. United States, supra; Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). The court thereafter determined the scope of the immunity actually conferred by an examination of the record.
It cannot be disputed that Kenny was granted transactional immunity and that he did testify as to matters related to the Reinauer transaction.
That brings us to a consideration of the question of whether or not the testimony given by Kenny while on the stand was "compelled," as that term is used in the statute, or volunteered.

II
Defendant's motion at the outset of trial below raised the immunity defense. The trial judge concluded that the answers of Kenny on attorney Van Riper's cross-examination during the federal trial were not responsive, were not compelled but were, instead, voluntary and hence did not provide him with immunity.
We cannot accept this conclusion.
The record of the trial in the federal court discloses that Kenny originally refused to answer pertinent questions and invoked his privilege to remain silent. After a voir dire examination out of the presence of the jury, where Kenny asserted his Fifth Amendment privilege to questions asked and was directed by the judge to answer them, there followed lengthy colloquy between the court and the witness, as well as between the court and counsel, and the following directions were then given by the federal trial judge to Kenny:
*106 Mr. Kenny, you will be called to the witness stand before the jury and you will be asked questions concerning your knowledge of the commission of federal offenses and violations of state law. There is a continuing order of the Court that you answer those questions. There is no doubt by the nature of the questions asked Mr. Kenny, being a defendant, incriminates himself by the answers he gave. He answered under compulsion by order of the Court and the statute with respect to such compulsion by order of the Court recites "No such witness shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled after having claimed this privilege against self-incrimination to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding against him in any court."
There is one exception to the statute, Mr. Kenny, "No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided by this section."
Therefore you will enjoy no immunity from prosecution from perjury, if you give false testimony, if you fail to tell the truth and give false testimony you are not immunized against that. But you are immunized against prosecution for the offenses to which your testimony truthfully given relates.
This was the order issued by the judge in open court to the witness on the witness stand.
Prior to commencement of cross-examination the following day, when some question concerning Kenny's immunity in the state court was raised, the trial judge made the following statement:
He is subject to further examination, and particularly cross-examination. He has an obligation under the oath he took to tell the truth, the whole truth, and nothing but the truth. His immunity depends upon it. * * * Mr. Kenny, you have a continuing obligation, if you wish to enjoy immunity from prosecution, to continue to testify truthfully. That means in accordance with the oath you took to tell the truth, the whole truth and nothing but the truth. By virtue of the provisions of Title 18 United States Code, 2514, this Court is authorized to conduct an immunization proceeding, and I repeat again that where a witness invokes his privilege against self-incrimination, and pursuant to the statute mentioned he is ordered to testify by the Court and testify under compulsion, it is then provided in the statute "No such witness shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled after having claimed *107 his privilege against self-incrimination to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding against him in any court."
As I interpret the statute "any court" means State Court as well as Federal Court.
Returning to a consideration of the specific question put to the witness, "Did you shake down or attempt to shake down those men for $50,000 while you were Director of the Board of Freeholders?", it is obvious, upon an examination of subsequent questions and answers, that neither a "yes" or a "no" answer would have been the whole truth. He had been ordered and directed by the trial judge to give the whole truth.
Further, not one of the seven experienced trial attorneys or the experienced trial judge  all with diverse roles and interests  saw the need to bring the witness "back to the mark" for any reason, much less because of an unresponsive, volunteered answer.
It is necessary to put the cross-examination of defendant in proper perspective. Defendant John J. Kenny had just given damaging testimony against his codefendants. A successful defense depended upon an attack on the credibility of the witness who gave this testimony. Obviously, the credibility of the defendant John J. Kenny would be seriously weakened if it could be demonstrated that he had been involved in criminal activity. It was the obligation of defendants' attorney to attempt to do so.
The State argues that when the witness asked the judge if he could "speak to the indictment," he indicated an intention to depart from the direct examination and seek to bring additional criminal transactions under the immunity protection.
We disagree. First, it seems apparent the witness was seeking reassurance that he could answer the questions and still retain his immunity. Then, after the question was put to the trial judge by the witness, he was instructed to wait for a question. He did so, and when one was put to him he *108 answered it. Bearing in mind the fact that the object of the immunity is to grant absolute freedom of mind to the witness and thus insure his cooperation, a fortiori he should be in a position to answer forthrightly all questions, including those which seek to probe his motivation for turning government witness and for testifying against his codefendants. In short, this question went to the credibility of the witness and was properly answered.
The fact that defendant readily answered the questions, as he was required to do under the federal judge's instructions to him with the knowledge that he was probably immunizing himself from state prosecution, cannot denigrate the scope of the immunity granted. The answers were responsive to questions asked by highly competent counsel on cross-examination who was seeking to discredit his credibility. The fact that defendant may have welcomed the inquiry is irrelevant to the question of compulsion. The significant fact is that neither he nor his counsel instigated or invited the disputed questions.
We conclude the testimony given by Kenny in federal court put into evidence the subject matter of the state indictment, related to it and was compelled, as that term is used in the statute.
Finding as we do that the result of the proceedings in the federal court was to grant to the defendant immunity from prosecution, conviction or punishment for the matters encompassed by the indictment pending herein, it follows that both the conviction and the sentence imposed upon defendant must be vacated. Heike v. United States, 217 U.S. 423, 431, 30 S.Ct. 539, 54 L.Ed. 821 (1910).

III
Defendant contends many other errors and irregularities occurring prior to and during trial justify a reversal. In light of our ruling on the immunity issue, we deem it unnecessary to discuss them. However, defendant does raise one issue *109 which merits comment. He argues that improper remarks by the prosecutor in his opening statement and in summation constituted reversible error.
The indictment charged offenses occurring in Jersey City and Hudson County. The grand jury returning this indictment was a state grand jury impaneled pursuant to N.J.S.A. 2A:73A-1 et seq. The venue of the indictment was laid, pursuant to N.J.S.A. 2A:73A-8, in Mercer County where the case was tried. With this background the prosecutor remarked in his opening statement:
He was also, that is, John J. Kenny, the dispenser of patronage for the party, the Democratic Party in Hudson County at the time. And, you will hear that Hudson County at that time was strictly a one-party county. It was a democratic county. And those in power in the Democratic Party in the county were in power in the county period.
Later, at the end of his opening statement, he said:
I represent to you most respectfully, ladies and gentlemen, that you will hear in this case a story of corruption, a story about the only way you could do business in the County of Hudson.
Then, in his summation, the prosecutor said:
[Y]ou know that men don't take payoffs in front of the State Capitol down here on State Street, not even in Hudson County, ladies and gentlemen, where this is the way they did business.
He continued:
Not even in Hudson County, ladies and gentlemen, where this was the only way they did business would a payoff be taken in public.
Shortly thereafter, the prosecutor said (in reference to Sarubbi's testimony):
And, by the way, who else * * * but somebody like Angelo Sarubbi, somebody who had been involved in politics up in the county for a number of years * * * would be able to talk to John J. Kenny? * * * *110 Who else other than someone who had dealt with him and knew how he did business in Hudson County? In essence * * * what I am asking you to consider with respect to Angelo Sarubbi is: who else would carry the money to a corrupt public official  Peter Pan?
Finally, the prosecutor urged the jury to:
* * * go into that jury room and deliberate and come back out to the courtroom and clearly and loudly enough for them to hear you, loudly enough for them to hear you in even in Hudson County, return the verdict which justice requires * * *.
Defendant argues these remarks, referring "to the way business is done in Hudson County," prejudiced him in that instead of being convicted for his individual wrongdoing, he might well have been convicted because he was a part of the allegation of widespread corruption of Hudson County.
These repeated references to "the way business is done in Hudson County" injected irrelevant and improper considerations into the case which were prejudicial to defendant. A prosecutor may in his opening state only the facts he intends in good faith to prove by competent evidence. State v. Hipplewith, 33 N.J. 300, 309 (1960). The prosecutor here, in stating to the jury in his opening that they were going to hear a "story of corruption," "a story of the only way you could do business in Hudson County," overstepped the bounds of permissible zeal. Such statements were unsupported by any evidence, and he must have known that testimony in support of those statements would not be admissible in the trial of the case.
Kenny was here charged in connection with a single transaction involving extortion and misconduct in office. Corruption in Hudson County was not the charge. Hudson County was not the defendant.
While the prosecutor is permitted a vigorous presentation, his primary obligation is to seek a fair trial. State v. Farrell, 61 N.J. 99, 104 (1972); State v. West, 29 N.J. 327, 338 (1959); State v. Sullivan, 24 N.J. 18, 36 (1957); *111 State v. Hipplewith, supra. His zeal must be contained within the boundaries of fair play, propriety and the four corners of the indictment. Dunn v. United States, 307 F.2d 883 (5 Cir.1952).
We cannot be oblivious to the widespread publicity given to this trial, which highlights the prejudicial nature of the remarks. The prosecutor here went beyond the evidence and the indictment in both his opening statement and his summation. The departure was highly prejudicial to defendant, sufficient standing alone to justify a reversal.
For the reason first stated, we vacate the conviction and sentence and direct entry of a judgment for defendant on the grounds he has been rendered immune from prosecution under the indictment.
HALPERN, P.J.A.D. (dissenting).
I respectfully dissent. I am convinced defendant's testimony was not "compelled" under the transactional immunity given to him under 18 U.S.C.A. § 2514.
Certain significant and undisputed facts appear: (1) the state grand jury indicted defendant on September 15, 1970; (2) the federal grand jury indicted him and others on November 15, 1970; (3) the crimes charged in the federal and state indictments were unrelated, each dealt with separate and unconnected criminal offenses; (4) the United States Attorney for New Jersey gave defendant transactional immunity intending, if possible, not to extend it to the pending state indictment; (5) the United States District Court judge who tried the federal indictment, and all defense counsel, including defendant's, knew the State of New Jersey intended to try defendant on the state indictment, and that it had made every effort, through its Attorney General, to prevent the immunity granted defendant to jeopardize the trial on the state indictment; (6) the United States Attorney, on direct examination, asked no questions of defendant relating to the state indictment; (7) defendant's incriminating answers, here in issue, revealed no facts not already possessed *112 by the State of New Jersey, and finally, (8) the questions asked of defendant by defense counsel during the federal trial, if at all relevant, were asked for the purpose of affecting defendant's credibility by showing a state crime had been committed, so that the jury could infer he expected immunity or leniency in exchange for his testimony against his codefendants.
It is against this backdrop of undisputed facts that we must gauge defendant's answers for which he now claims transactional immunity. I am satisfied beyond a shadow of a doubt that defendant intentionally answered the questions posed so as to incriminate himself, knowing that otherwise immunity would not attach.
In my view, defendant's answers were not made responsively and in good faith, but were shrewdly calculated to obtain the result for which he now argues and, therefore, were not "compelled" but were graspingly volunteered and contrived, under the appearance of compulsion, to obtain an immunity bath. His hope for immunity or leniency could have been revealed to the jury by his answers without the incriminating features voluntarily appended. The commendable philosophic reasons for granting transactional immunity, which have become part of our constitutional fabric, should not be demeaned to the point where they are used as a pernicious sword rather than a legitimate shield. See In re Zicarelli, 55 N.J. 249, 270-271 (1970), aff'd sub nom. Zicarelli v. N.J. State Comm. of Investigation, 406 U.S. 472, 477, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), reh. den. 335 U.S. 836, 69 S.Ct. 9, 93 L.Ed. 388 (1948); 8 Wigmore, Evidence (McNaughton rev. 1961), § 2283 at 518-519. Nor should 18 U.S.C.A. § 2514 be construed so as to offer defendant a gratuity for his crime. Heike v. United States, 227 U.S. 131, 152, 33 S.Ct. 226, 57 L.Ed. 450 (1913).
The majority correctly points out that defendants' attorneys in the federal trial justifiably sought to discredit Kenny *113 as a witness. They think it significant that none of the experienced defense attorneys or the trial judge "saw the need to bring the witness [Kenny] `back to the mark' for any reason, much less because of an unresponsive, volunteered answer." Its significance escapes me, since I would not expect the defense attorneys, who all wanted Kenny discredited, to voice an objection. They were not concerned with whether Kenny's answers ultimately immunized him from prosecution on the state indictment. Nor would I expect the trial judge to intervene sua sponte since he felt he had given Kenny transactional immunity sufficiently broad to encompass the state indictment, although immediately after the original questions were asked by attorney Van Riper, and the answers given, the trial judge expressed his concern thusly:
Mr. Van Riper, it would seem to me that many of your questions on cross-examination were dealing with an attack upon the immunity, particularly the State. I don't know why you are injecting that here. You have a right to develop before this jury that immunity from prosecution was conferred upon the witness so that the jury can take that into consideration as to the credence they will afford to his testimony, but I don't want any further attempts in any fashion to eliciti information which goes to the immunity from prosecution on the State indictment. This is not the proper time for this.
Furthermore, it is not a matter of your concern.

* * * * * * * *
Exactly, but counsel, listening very carefully, I was not naive when there was particular reference to the State Court indictment to believe that an effort was not being made for any evidence to pull out the underpinnings of the immunity on that. That is no concern of counsel here.
In my view, as previously indicated, Kenny's answers, which the majority say immunized him, were not compelled; rather, they were unresponsive and volunteered, and the failure of the defense attorneys or the trial judge to object is immaterial.
With respect to the other grounds urged for reversal by appellant, I see no prejudicial error in any of them warranting reversal.
I would affirm the conviction.
NOTES
[1] 18 U.S.C. § 2514 provides: "Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

Congress repealed this statute by Pub. L. 91-452, Title II, §§ 227 (a), 260, October 15, 1970, 84 Stat. 930, 931, effective four years following the sixtieth day after the date of its enactment, with such repeal not to affect any immunity to which any individual is entitled thereunder by reason of any testimony or other information given before such day.