Andrew PERRY, Petitioner,

v.

William F. MULLIGAN, Chief Probation Officer Essex County Probation Department, Respondent.

Civ. A. No. 75–79.

United States District Court,
D. New Jersey.

Sept. 19, 1975.

Stanley C. Van Ness, Public Defender, Trenton, N. J., by Anthony M. Mahoney,

Designated Counsel, Newark, N. J., for petitioner Perry.

Joseph P. Lordi, Essex County Prosecutor by Kenneth Ply, Asst. Prosecutor, Newark, N. J., for respondent Mulligan.

## OPINION

STERN, District Judge.

■■ Andrew Perry, a former Newark policeman, was convicted of attempted extortion in violation of N.J.S.A. 2A:85-5 and 2A:105-1. He is presently serving two years probation, and petitions for a writ of habeas corpus.[1]

The petitioner appealed his conviction to the Appellate Division of the New Jersey Superior Court and to the New Jersey Supreme Court. Both courts affirmed his conviction.[2] Since the issues raised by this petition are identical to those passed on by both appellate state courts, the petitioner has fully exhausted his state remedies. Title 28 U.S.C. § 2254(b); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Perry's claims for relief relate to the conduct of the state prosecutor during his summation. The prosecution commenced its case against Perry by showing that he was involved in the arrest of one Willie Lee Jones on March 22, 1968. The arrest was for possession of heroin, a charge which later resulted in Jones' conviction. At Perry's trial, Jones testified as a prosecution witness. Jones stated that Perry approached him after the arrest and offered to prepare a favorable probation report for $1,000.

Jones testified that he immediately reported the offer to the Essex County Prosecutor. The prosecutor equipped Jones with $300 in marked money and a recording device. Four plainclothes detectives then accompanied Jones to a meeting with the petitioner Perry at a tavern. Jones testified that he and Perry conversed briefly at the bar and and then entered the men's room. The detectives broke in almost immediately.

The officers testified that Jones and Perry spoke at the bar, and that Perry showed Jones a probation report. Only one detective claimed to have overheard any part of the conversation at the bar. He stated he heard the words "$300" and "ah ha." The three other detectives, including the officer closest to Jones and Perry, testified that the conversation was inaudible. The tape recording of the conversation proved to be unintelligible. At the time of the arrest the bait money was still in Jones' possession.

The defense argued that the actions of petitioner were consistent with police procedure. Their theory was that the meeting was an attempt by Perry to gain narcotics information from Jones. In addition to the testimony of the petitioner, the defense presented Captain Steinberg, Perry's superior on the police force. Steinberg testified that Perry had submitted a report indicating that Jones had approached him with a request for assistance at his court appearance. Steinberg stated that he told Perry to "play along with Mr. Jones" in order to obtain narcotics information. Finally, the defense presented the testimony of Willie O. Hopkins. Hopkins was an acquaintance of both Jones and Perry. He stated that Jones told him, prior to the

1. Under the requirements of Title 28 U.S.C. § 2254, the threshold inquiry is whether petitioner is "in custody." The custody requirement of the habeas corpus statute does not limit the Great Writ to those who are in "actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). It is clear that the sentence imposed on petitioner constitutes a restraint "not shared by the public generally." *Jones v. Cunningham, supra*, at 240, 83 S. Ct. at 376. Petitioner must meet the conditions of his probation or face possible im-

prisonment. N.J.S.A. 2A:168-4. This restraint is sufficient to warrant a finding that petitioner is "in custody," within the meaning of Title 28 U.S.C. §§ 2241 and 2254. *United States ex rel. De Rosa v. Superior Court of New Jersey*, 379 F.Supp. 957, 960 (D.N.J.1974). It should be noted that petitioner also received a two-to-three years suspended sentence and a $200 fine.

2. *State v. Perry*, 128 N.J.Super 188, 319 A.2d 505 (App.Div.1973), aff'd 65 N.J. 45, 319 A.2d 474 (1974).

contact with the Essex County Prosecutor, that if he (Jones) had to go to jail Perry would go with him.

A careful review of the trial record indicates that the trial resolved itself into a contest of credibility between the petitioner Perry and his accuser Jones. The jury was forced to make their judgment without the aid of any substantial corroboration for the testimony of either party. As the trial judge noted at sentencing, "it was a difficult case for the jury to make a decision in." (Tr. 7/26/71: 7) In oral argument before the New Jersey Supreme Court the state itself characterized this as a close case on its facts. *State v. Perry*, 65 N.J. 45, 55, 319 A.2d 474, 479 ((1974) (Clifford, J., dissenting).

It is against this backdrop that the prosecutor's summation must be viewed. In summing up he stated:

And believe me *there is much more on trial here than just Andrew Perry.* Everytime you come back with a verdict, everytime that Foreman gets up and addresses to the Court his verdict, whether it be guilty or not guilty, the system has been put to the test. The system of jurisprudence upon which affords to every defendant who will ever be seated at the counsel table before a judge in a criminal action is again put to the test. I submit to you that *there is also another system on trial* in this case, the system of law which governs every defendant on the street like Willie Lee Jones. The system of law which says to every defendant like Willie Lee Jones, if you commit a crime you are going to be arrested and you are going to be prosecuted and you are going to be found guilty and you are going to be sentenced. The system of law which affords to Willie Lee Jones as it does to Andrew Perry the same rights and privileges, the same equal rights and privileges. Andrew Perry has no more rights under our system, has no more privileges because he is a police officer or was a police officer than does Willie

Lee Jones. *All the Willie Lee Joneses of the world are on trial here and you by your verdict will say whether or not the Willie Joneses of the world are going to be given a fair shake or whether or not the Willie Lee Joneses of this world are going to be subjected to not only being arrested for whatever crime they may have committed but whether or not they are going to be subjected to further arrest after that and whether or not because of the position which they find themselves in the Willie Lee Joneses of this world are going to have to pay through the nose to everybody. That has got to stop, ladies and gentlemen. It has got to stop.*

Tr. 6/18/73: 303–304)(Emphasis added)

\* \* \* \* \* \*

Responding to the defense's attack on the credibility of prosecution witnesses, the prosecutor went on to state:

But, remember one thing, remember the one man who sits here and listens to everything that every single person, every single word said by every single State witness before he even had to open up his mouth, *which he knew he had to do.* But, the one man who hears everything that every witness produced by the State says is this defendant, every defendant does, the defendant hears it all. The defendant sits right there at the counsel table as does his lawyer and make no mistake about it. I have no objection to Mr. Maurer counseling his witness, his defendant. That's his obligation to do so, and he is a good lawyer, and he has been around a long time. *Make no mistake about it, he tells his man what to say and how to say it and in a certain context* . . .

At this point the defense counsel immediately interposed an objection:

MR. MAURER: Now, if the Court please, my God, how far are we going to let him go.

THE COURT: Yes, I find that objectionable and I ask that it be stricken.

MR. MAUTONE: Mr. Maurer, as does his defendant, has every opportunity to sit here and listen to all of the testimony. He not only has a right, but he has the obligation to discuss testimony with his client as do I and as I do, I not only have the right to talk to the witnesses I'm going to produce, but I have the obligation to talk to them before they testify. So when Mr. Maurer makes his implication that I tell Investigator Davis what to say and to be honest with you, Mr. Maurer's objection is well taken, *I did not mean to imply, although I worded it so it sounded that way, I didn't mean to imply that Mr. Maurer puts words in his client's mouth or tells him to lie. I don't mean to imply that for a minute and I'm sure that Mr. Maurer got that impression as did the Court obviously from the objection, and its being sustained. But, my point is that Mr. Maurer and his client sit here all the time and listen to everything and then he testifies. There is nothing wrong with his counseling him, but you must be aware of it and yon can't blot it out of your mind.* You must be aware that I have talked to my witnesses too.

Tr. 6/18/73: 335–336) (Emphasis added) Finally, the prosecutor returned to his original theme:

Andrew Perry took a dive for him and Andrew Perry was trying to take another dive for him right here and for it he was looking to get some money and that's why he was indicted and charged for it. That's why he is being tried and he is on trial for that charge *and this time he is on trial and all the Willie Lee Joneses of the world are on trial.*

I'm asking you now that after you listen to his Honor's charge come back with a verdict of guilty relative to Mr. Perry. *I'm telling you to come back and tell Mr. Perry and every other dishonest cop, and there are some unfortunately, no we are sick and tired of the Willie Lee Joneses in this world*

*being taken advantage of, the Willie Lee Joneses in this world who have enough of their own problems, that they need our help and that we are sick and tired of making more problems for them.*

Tr. 6/18/73: 348–349) (Emphasis added)

It is petitioner's contention that this summation worked to deprive him of due process of law and of the effective assistance of counsel.

At the outset, it is appropriate to comment that this Court approaches its duty well aware of the fact that the courts of the State of New Jersey have already brought their accumulated experience and learning to bear on the very issues presented here. But this Court is likewise cognizant of its Congressional mandate:

In exercising the power thus bestowed, the District Judge must take due account of the proceedings that are challenged by the application for a writ. All that has gone before is not to be ignored as irrelevant. But the prior State determination of a claim under the United States Constitution cannot foreclose consideration of such a claim, else the State court would have the final say which the Congress, by the Act of 1867, provided it should not have. Cf. *Ex Parte Royall,* 117 U.S. 241, 248–250, 6 S.Ct. 734, 29 L. Ed. 868.

*Brown v. Allen,* 344 U.S. 443, 500, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.). Cf. *United States ex rel. Macon v. Yeager,* 476 F.2d 613, 617 (3rd Cir. 1973) (Adams, J.)

■ The standard for review of alleged state prosecutorial misconduct is the "narrow one of due process, and not the broad exercise of supervisory power that [it] would possess in regard to [its] own trial court . . ." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *United States ex rel. Haynes v. McKendrick,* 350 F.Supp. 990, 997 (S.D.

N.Y.1972), *aff'd* 481 F.2d 152 (2nd Cir. 1973). Thus, a federal court will grant a writ of habeas corpus only when the challenged prosecutorial conduct has inflicted "substantial prejudice" upon the petitioner. *United States ex rel. Chase v. Rundle,* 266 F.Supp. 487, 491 (M.D.Pa. 1967), *aff'd* (3rd Cir.), *cert. denied* 390 U.S. 928, 88 S.Ct. 865, 19 L.Ed.2d 991 (1967). The prosecutor's comments must have created the "demonstrable reality" of "fundamental unfairness" to the petitioner. *Donnelly v. DeChristoforo, supra,* 416 U.S. at 642, 94 S.Ct. 1868; *United States ex rel. Paxos v. Rundle,* 491 F.2d 447, 453 (3rd Cir. 1974).

█ Any substantive consideration of allegations of prosecutorial misconduct or improper comment must begin by recognizing the special nature of the trust necessarily reposed in the representative of the government. In the classic' statement of those obligations, Justice Sutherland commented that:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is at least as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. . . . It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much

weight against the accused when they should properly carry none.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). New Jersey plainly imposes no lesser standard upon its representatives. *State v. Farrell,* 61 N.J. 99, 104–105, 293 A.2d 176, 178–179 (1972).

██ Both federal and New Jersey courts allow some latitude to prosecutors in commenting on the social consequences of a crime. *United States v. Ramos,* 268 F.2d 878, 880 (2nd Cir. 1959); *Tenorio v. United States,* 390 F.2d 96, 98–99 (9th Cir.), *cert. denied* 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968); *State v. Knight,* 63 N.J. 187, 193–194, 305 A.2d 793, 796 (1973); *State v. Capano,* 125 N.J.Super. 383, 384, 311 A.2d 191, 192 (App.Div.1973).

But these cases do not obscure the fundamental rule of law. A defendant is entitled to be tried only on those matters appearing within the four corners of the indictment. It is the responsibility of the prosecutor to refrain from appeals to passion or to prejudice, and to restrict his comments to matters within the record and legitimately in issue. *State v. Kenny,* 128 N.J.Super. 94, 111, 319 A.2d 232, 241 (App.Div.1974), *aff'd* 68 N.J. 17, 342 A.2d 189 (1975); *Viereck v. United States,* 318 U.S. 236, 247–248, 63 S.Ct. 561, 87 L.Ed. 734 (1943); *United States v. Fullmer,* 457 F.2d 447, 449 (7th Cir. 1970); *Dunn v. United States,* 307 F.2d 883, 886 (5th Cir. 1962). As the American Bar Association Project on Standards for Criminal Justice posed the issue:

> ¶ 5.8(c) The prosecutor should not use arguments calculated to inflame the passions or prejudice of the jury.

> ¶ 5.8(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the prevailing law, or by making predictions of the consequences of the jury's verdict.

Standards Relating to the Prosecution Function and the Defense Function, Approved Draft (1971). In the instant case, the prosecutor clearly overstepped the bounds of permissible comment, and he did so to petitioner's substantial prejudice.

As Justice Clifford of the New Jersey Supreme Court stated in dissent:

> What should have been before the trial court was the issue of whether Andrew Perry committed the attempted extortion with which he was charged —no less, certainly, but just as certainly no more. Police corruption was not properly on trial, and all the Willie Lee Joneses of the world were not properly on trial. Only Andrew Perry was on trial—or should have been —for the offense set forth in the indictment.

*State v. Perry,* 65 N.J. 45, 319 A.2d 474, 481 (1974). But here the prosecutor persistently attempted to deflect the attention of the jury from the limited issues legitimately before them. His remarks were not "fleeting," as in *United States v. Ramos, supra,* at 880. Neither were they "isolated" or "ambiguous," *Donnelly v. DeChristoforo, supra,* 416 U.S. at 646–647, 94 S.Ct. 1868. The prosecutor did not seek merely to depict the social consequences of the crime. Rather he hinted at the dire social consequences of an acquittal. The state explicitly sought to enlist the jury in a public crusade on behalf of "all the Willie Lee Joneses" of the world. Petitioner Perry thus had to contend not only with the Willie Lee Jones who appeared and testified against him, but with a faceless array of the underprivileged, conjured up by the prosecutor. The state sought to try not only Andrew Perry but all police corruption in Newark.

■ While the error is apparent, it might not rise to constitutional dimension had the state's other evidence been stronger and more clearly corroborated. Cf. *United States ex rel. Kirk v. Petrelli,* 331 F.Supp. 792 (N.D.Ill.), *aff'd* 492 F.2d 1245 (7th Cir. 1974); *Sablan v. People of the Territory of Guam,* 434 F.2d 837 (9th Cir. 1970). But here, where the evidence is conceded to be virtually in equipoise by the state itself, the pernicious effects of deviation from the rule of four corners were magnified. In fact, they were lethal. As the Fifth Circuit commented in *Bruce v. Estelle,* 483 F.2d 1031, 1040 (1973):

> These comments most probably infected the whole decision-making process of the jury . . . . Such irrelevant diatribes cannot be countenanced.

This diversion of the jury's attention was intended to have and did have "a significant impact on the jury's deliberations." *Donnelly, supra,* 416 U.S. at 646, 94 S.Ct. at 1873. As such, it violated Perry's constitutionally protected rights to a fair trial on the limited matters contained in the indictment.[3]

The issue is even clearer when the remarks of the state are considered in conjunction with the comments regarding Perry's counsel. With respect to these remarks the restrictive attitude adopted in reviewing state prosecutorial misconduct no longer applies. "When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

The Third Circuit has recently taken a strong position with respect to comments concerning a defendant's exercise of his right to counsel. This right,

3. Defense counsel's failure to object to the prosecutor's remarks at trial cannot preclude this Court's consideration of the matter. It is clear in this Circuit that prosecutorial misconduct may be raised in a petition for habeas corpus relief despite the failure to object at trial. *United States ex rel. Macon v. Yeager,* 476 F.2d 613, 614 n. 2 (3rd Cir. 1973).

guaranteed by the Sixth and Fourteenth Amendments of the Constitution, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), may not be infringed by prosecutorial conduct, *United States ex rel. Macon v. Yeager*, 476 F.2d 613 (3rd Cir. 1973), *cert. denied* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973). In *Macon*, the petitioner was convicted of manslaughter. The record indicated a close case in which credibility was a central issue. 476 F.2d 613, 614. During the course of his summation to the jury, the prosecutor in *Macon* characterized Macon's actions following the shooting as those of a guilty person. In doing so, he adverted to the fact that Macon had contacted his lawyer, stating:

> He says that he has trouble sleeping. He gets up the next morning and lo and behold, what does he do? He calls his lawyer. These are acts of innocence?

476 F.2d 613, 614.

Macon raised no objection to the summation. Nonetheless, the Court of Appeals granted relief on the basis of its construction of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). As the Court stated,

> For the purpose of the "penalty" analysis, however, we perceive little, if any, valid distinction between the privilege against self-incrimination and the right to counsel. It can be argued, with equal vigor and logical support, as to either the *Griffin* situation or the present case, that a prosecutor's comment seeking to raise in the juror's minds an inference of guilt from the defendant's constitutionally protected conduct constitutes a "penalty" on the free exercise of a constitutional right.

476 F.2d 613 at 615. (Footnote omitted)

As the Court continued,

> In the present case, because critical portions of the evidence were disputed, the credibility of the petitioner as a witness was a central issue. This is not a situation where the case against

the petitioner was otherwise "so overwhelming" that the constitutional error did not, beyond a reasonable doubt, contribute to the conviction. Cf. *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

*Id.*, at 616.

In the case at bar, the comments by the prosecutor were if anything more egregious. Here the credibility of the witnesses Jones and Perry was not, as in *Macon*, "a central issue." 476 F.2d 613, 616 (emphasis added). Here the credibility of the petitioner was the *only* issue.

In *Macon* the commentary on the petitioner's consultation with counsel passed without objection. The instant case is distinguishable from *Macon* to the extent that counsel promptly registered an objection to the prosecutor's remarks. The trial judge then stated:

> Yes, I find that objectionable and I ask that it be stricken.

No further curative instruction was given to the jury. The prosecutor was not admonished by the court. But despite the extreme brevity and the limited nature of the curative instructions, the case might have been appropriately distinguished from *Macon* had not the "apology" promptly restated the original error in even more explicit form. Whatever minimal relief was afforded by the trial court's initial response was wholly subverted when the prosecutor told the jury that they "must be aware of" and "[could] not blot from [their] mind[s]" the very matter which the judge had ordered stricken from the record. And as far as the jury was concerned, the prosecutor had the last word. That word was clearly constitutional error. Compare, *United States ex rel. Ford v. New Jersey*, 400 F.Supp. 587 (D.N.J.1975).

■ There was only one issue in this case—who told the truth, Jones or Perry. The prosecutor improperly buttressed the

credibility of Jones with that of "all the Willie Lee Joneses" of the world by suggesting that their rights could be vindicated only by a conviction. At the same time that he sought to identify his chief witness with underprivileged persons everywhere, the prosecutor improperly subverted Perry's testimony, not only by identifying him with all corrupt Newark policemen or officials, but also by telling the jury that Perry's lawyer had told Perry to lie in court and had trained him to do it. These comments went straight to the heart of the matter. This Court is constrained to hold that, taken together, they deprived petitioner of his constitutionally guaranteed right to a fair trial. Accordingly, the petition will be granted and the writ will issue unless the state retries petitioner within ninety (90) days hereof.