STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. HAROLD J. WELSCH, DEFENDANT-APPELLANT.

Argued January 19, 1959—Decided February 16, 1959.

Mr. *Harold H. Fisher* argued the cause for appellant (*Messrs. Shanley & Fisher,* attorneys).

Mr. *William C. Brudnick,* Special Assistant Prosecutor, argued the cause for the State (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney).

The opinion of the court was delivered by

WACHENFELD, J.  The defendant was convicted by a jury of committing an act of open lewdness in violation of *N. J. S.* 2A:115-1.  He was fined $200 and sentenced to an indeterminate term at the Bordentown Reformatory. Sentence was suspended, however, upon condition that he submit to psychiatric care.

On appeal, the Appellate Division affirmed.  We granted the defendant's petition for certification.  The grounds of appeal urged here are substantially the same as those presented below.

The sordid facts as developed at the trial need not be detailed other than as commented on hereafter since the disposition of the cause does not turn on this phase of the appeal.

The incident in question allegedly took place on Sunday, April 28, 1957.  The State's case rested entirely upon the testimony of the complaining witness, a married woman, who at the time of the occurrence was accompanied by her six-year-old niece.  This testimony was not corroborated in any respect.

The defendant, a married man and the father of three children, took the stand and emphatically denied the charges made against him.  He testified as to a certain skin irritation with which he was afflicted and the resulting physical discomfiture plus his attempts to relieve himself therefrom, which he claims brought about the visual misinterpretation testified to by the complaining witness.  The existence of dermatitis was corroborated by his wife and a doctor.

The Appellate Division concluded that although there were some inconsistencies in the complaining witness' testi-

mony, her story basically "remained unchanged throughout the cross-examination."

The defendant continues to insist, however, despite the adjudication below, that the verdict of conviction was against the weight of the evidence. He also contends that it was the product of passion and prejudice created in part, if not wholly, by the statements of the prosecutor in summation which stressed the fact that the defendant had not produced character witnesses on his behalf and asserted that his failure to do so created an issue which might be decisive of the case submitted to the jury for determination. It is urged these comments constitute prejudicial and reversible error under our plain error rule, *R. R.* 1:5-1(*a*), even though no objection was offered.

As to the defendant's contention that the verdict was contrary to the weight of the evidence because the testimony of the State's only witness was inconsistent and incapable of belief, it is quite apparent from the record that the whole case turned upon the credibility to be given to the testimony of the complaining witness as contrasted with the complete denial of the defendant under oath. Even though there were minor inconsistencies and conflicts in the State's evidence, the issue nevertheless resolved itself into a contest between two versions of the truth, a situation always presenting a jury question.

It may well be that it would seem improbable that a man would act the way the defendant is described by the State as having acted, but this conclusion is buttressed by faith in human nature and experience with the normal standards of human behavior, which unfortunately do not always prevail.

■■ The power of an appellate tribunal to reject findings of a jury has its limitations. It was not intended that appellate courts should interfere with the constitutional right of trial by jury by weighing the evidence and substituting their judgment for that of the jury. *Hager v. Weber*, 7 *N. J.* 201, 210 (1951). We will not set aside a verdict merely because in our opinion, upon the same evi-

dence, we might have found otherwise. *Boesch v. Kick,* 97 *N. J. L.* 92, 97 (*Sup. Ct.* 1922); *Knickerbocker Ice Co. v. Anderson,* 31 *N. J. L.* 333, 335 (*Sup. Ct.* 1865). As long as "a verdict * * * rests upon testimony competent to sustain the inference implied in such a finding [it] is ordinarily conclusive" upon us. *Hager v. Weber, supra.* "* * * [O]ur review upon appeal is aimed only at correcting injustice resulting from obvious failure by the jury to perform its function." *State v. Haines,* 18 *N. J.* 550, 565 (1955).

These doctrines are epitomized in our present rule, *R. R.* 1:5–1(*a*), that "* * * A verdict of a jury shall not be set aside as against the weight of the evidence unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion."

■ We conclude that appellant's first point has no merit. The entire proof of the State's case came from the lips of one witness, and although the number of witnesses is never controlling, it nevertheless may be a factor for consideration in determining whether the conduct and the remarks of the prosecutor in summation remained within the limits of what constitutes fundamental fairness as defined by our adjudications.

The defendant did not produce any character witnesses, but nevertheless in his summation the prosecutor said:

"And, does anyone come to the stand saying what is this man's reputation for Christian virtue or moral probity? Where did you hear it from anybody? And you have a right to decide this case on those issues, Ladies and Gentlemen."

■ There are many decisions on the question and they establish beyond doubt that:

"* * * in a criminal case, the prosecution cannot offer evidence of the character or reputation of the defendant unless the defendant himself raises the issue, *State v. Raymond,* 53 *N. J. L.* 260, 21 *A.* 328 (*Sup. Ct.* 1891); *State v. Hauptmann,* 115 *N. J. L.* 412, 436, 180 *A.* 809, 824 (*E. & A.* 1935), *certiorari* denied 296 *U. S.* 649, 56 *S. Ct.* 310, 80 *L. Ed.* 641 (1935); *State v. Steensen,* 35 *N. J. Super.* 103 (*App. Div.* 1955); *Michelson v. United States,* 335

U. S. 469, 69 *S. Ct.* 213, 93 *L. Ed.* 168 (1948) ; 1 *Wigmore, Evidence* (3 ed. 1940), § 56, *pp.* 450, 454." *State v. D'Ippolito,* 19 *N. J.* 540, 546 (1955).

In the case last cited this court emphatically and bluntly pointed out, 19 *N. J.* at *page* 548:

*❡* "The prosecution should never be permitted to turn the defendant's failure to avail himself of the privilege of introducing character evidence in his own behalf into an affirmative weapon against him."

Comparing the admonition in the *D'Ippolito* case, *supra,* and the utterances of the prosecutor here, one can hardly escape the conclusion that what we have directly proclaimed should "never be permitted" in a criminal case occurred in the matter before us in a rather unequivocal manner.

But the State urges the subject remarks did not constitute reversible error because (1) there was no objection on the record; (2) the trial judge preserved the "purity" of the proceedings by his general admonition to the jury to disregard all extraneous matters; and (3) defendant's counsel in substance invited the prosecutor's comments by dwelling upon the defendant's good character in his own summation.

Defense counsel in his summation said:

"* * * there isn't one iota of evidence that indicates that he has lived nothing but a clean life. There has been no attack on his past record. * * *"

Again:

"* * * if a man like Mr. Welsch, a perfect record, there is nothing against him in this case—if there were, the Prosecutor's Office would have presented it * * *"

And again:

"I ask you, Members of the Jury, to consider this case between the State of New Jersey and Harold Welsch, this young man who has led a fine life up until this point, this unfortunate incident

which he is charged with, but I say in view of the fine background, the family he raised, the fact that he had one job and he took another job so he might advance himself and members of the family, I say that alone should create in your minds a reasonable doubt * * *"

These remarks are not contrary to the record before us. It is not disputed that defendant was raising a family and had taken two jobs in order to advance himself and benefit his family. There was no impropriety in stressing these attributes which are reflected in the record.

Certain it was that this emphasis did not open the door for the prosecutor's devastating invasion of the defendant's basic right by incorrectly charging he was under an obligation to prove his reputation "for Christian virtue or moral probity." If the defendant went beyond the record and impliedly made "reputation" an issue, the prosecutor's relief was to object and ask to have the jury instructed according to the law and not to indulge in "retaliation," as urged in the State's brief. See *People v. Kirkes*, 39 *Cal. 2d* 719, 249 *P. 2d* 1 (*Cal. Sup. Ct.* 1952); *People v. Cook*, 148 *Cal.* 334, 83 *P.* 43 (*Cal. Sup. Ct.* 1905); *People v. Kramer*, 117 *Cal.* 647, 49 *P.* 842 (*Cal. Sup. Ct.* 1897).

The prejudicial effect of the prosecutor's utterance becomes more important in view of the close balance throughout the trial, the case ultimately turning entirely upon the question of credibility. He not only improperly said that no one had come forward to testify to the defendant's good reputation, but he created an issue not sanctioned by the law when he emphasized: "And you have a right to decide this case on those issues, Ladies and Gentlemen." The jury had no such right, but it may well have been induced to convict the defendant by the prosecutor's improper creation of an issue of bad repute. Under the special circumstances of this case, there was plain error of which we must take notice. *R. R.* 1:5–1(a); *State v. D'Ippolito, supra*.

There is little assurance that the trial judge's charge, in substance that the case should be decided strictly on its merits, in its present setting cured the prejudicial remarks

so firmly implanted by the prosecutor's summation and not specifically referred to by the court.

Reversed and remanded.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.