Billy Joe SEELY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14762.

Court of Criminal Appeals of Oklahoma.

May 13, 1970.

Robert H. Macy, Ada, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Preston A. Trimble, Dist. Atty., Murray F. Gibbons, Asst. Dist. Atty., for defendant in error.

## MEMORANDUM OPINION

BRETT, Presiding Judge.

Plaintiff in error, hereafter referred to as defendant, was charged by information in the County Court of McClain County, Oklahoma, on November 20, 1967, with the offense of operating a motor vehicle while under the influence of intoxicating liquor, in that court's case number 6955. On December 11, 1967, the jury returned a verdict of guilty, and assessed defendant's punishment at a fine of $20.00, and a jail sentence of ten (10) days in the county jail. Defendant perfected his appeal from that judgment and sentence.

Defendant discusses three assignments of error in his brief, but only the second and third such propositions will be discussed herein. In the first assignment defendant complains of the conduct of the trial judge in making certain admonitions to the spectators in the courtroom, but such authority is clearly within the discretion of the trial judge.

Defendant's second proposition complains that "The closing argument of the Assistant District Attorney went far outside the record, was highly improper, inflammable, and designed to appeal to the passion of the jury." His third proposition recites, "That the verdict of the jury is contrary to and not supported by the evidence." These two assignments of error will be discussed together, because of the unique situation as it appears in the record. It will be stated at this time also, that counsel only interposed his objections to the prosecutor's statements in his closing arguments, and should have gone further and moved that the remarks be stricken. Counsel also objected to certain questions propounded to the defendant in cross-examination, and properly reserved his exceptions.

Defendant was proceeding from Ada, Oklahoma, with his wife and two children when he stopped south of Purcell, because of a faulty headlight. When he emerged from his automobile, he staggered slightly and fell back against the car. Because of this and the fact that the Highway Patrol Trooper smelled some alcoholic beverage on his breath, defendant was placed in the trooper's patrol car. Trooper Lower was the only officer who observed the defendant outside the automobile. The two other troopers observed him from the back-seat of the patrol car. All testified that the defendant's speech was slurred and they could detect some odor of alcoholic beverage. Defendant was arrested and placed in the McClain County jail. The Highway Patrol Troopers arranged for the transportation of defendant's wife and two children to their home in Midwest City, Oklahoma.

Defendant admitted that he had drunk some champagne with his aunt and another person in Ada, whom he and his family had gone to visit. The champagne was a "delayed celebration" for his return from Viet Nam, where he had recently served. Defendant testified that three persons drank one bottle of champagne commencing about 3:30 P.M. Defendant left Ada about eight P.M. and was stopped by the Highway Patrol Trooper about 9:50 P.M. the same night. At his trial defendant testified that he was not under the influence of intoxicants, but instead said that he had been affected by carbon monoxide fumes from a faulty manifold gasket on his auto-

mobile. He stated that upon his return home he inspected the manifold and found the faulty gasket which he replaced. In response to the prosecutor's question, he stated that he did not attempt to fix it on the road because he did not have sufficient tools to make the correction. He gave no specific answer why he did not have it fixed in Pauls Valley, unless it was that he did not know what the trouble was. His wife testified at defendant's trial in behalf of her husband's condition, and stated that he was not under the influence of intoxicants.

One vital aspect of this case is the fact that no sobriety tests of any kind were administered to defendant to determine whether or not he was intoxicated, or under the influence of intoxicants, before or after he was taken to the county jail. Had such recognized tests been administered, most doubt would have been removed. See: Penny v. State, Okl.Cr., 410 P.2d 553.

■ Defendant complains in his brief that in his argument to the jury the prosecutor went outside the record in such a manner as to arouse the passions of the jurors, which thereby prejudiced his trial. In the same connection, we observe that the prosecutor stated in his cross-examination of defendant, "Don't you know, *as a matter of fact,* that where a person drinks wine to the extent that they're under the influence of the liquor that every time they * * * for the next twenty-four hours, that every they take a drink of water that it brings the whole thing back again?" It appears that the prosecutor was subtly offering testimony concerning what effect champagne had upon a person. This ap-

pears especially pertinent insofar as the prosecutor stated the question in a manner, as being a "matter of fact." In his closing argument the prosecutor argued further, "Now there's no testimony here as to the potency of champagne and personally, I'm thankful that I don't know except what I've been told * * *. But I do know this, and this was brought out in this evidence this morning, that where a person imbibes sufficient wine, champagne or what not, to become under the influence of it, that is a lasting effect, that every time you take a drink of water it brings on an acceleration of a condition." [1]

Our research fails to verify the prosecutor's contention concerning either the potency of champagne, or his statement with relation to the subsequent drinking of water bringing on an acceleration of intoxicated condition.[2] In fact, the opposite of both statements is reflected by the references considered by the Court.[3]

■ With reference to defendant's complaint concerning the prosecutor's argument, which referred to the great number of deaths on the highway, as being prejudicial because no evidence of an accident was presented to the jury, the state replies in its brief, "This is a matter of common knowledge and prosecution is well within its rights in calling these facts to the attention of the jury." While such may be true, there appears to be little doubt but that such reference had some material effect on the jury in this case. In these situations, it becomes necessary for the Court to look at the record and consider all of the pertinent facts and circumstances reflected therein, to determine whether or

1. C.M.–100.

2. Leon D. Adams, The Commonsense Book of Drinking, David McKay Co., Inc., New York, p. 146, recites: "There is a widely believed fable that a drink of water taken the morning after a spree makes the thirsty man drunk all over again. What really happens is that the water, taken while he is still drowsy, awakens him; he discovers he is dizzy, and mistakes his dizziness for intoxication.

Whether he drank water or not, he would have been dizzy anyway."

3. Adams, Ibid. p. 109; "Champagne, when you pour it from its elegant bottle, turns out to be nothing more than a white table wine with bubbles."
Lawyers' Medical Cyclopedia, vol. 3, § 24.5 indicates that wine has from 7% to 12% alcohol by volume. Whiskey, rye, bourbon, corn, rum, gin, brandy, and scotch contain from 40% to 50% alcohol by volume.

not the attorneys' conduct and argument had a prejudicial effect on the jury. Upon such consideration, if it appears that the verdict may have resulted from such prejudicial effect, this Court is empowered to take such corrective action as the matter warrants. See: Love v. State, Okl.Cr., 360 P.2d 954.

■ Ordinarily this Court is reluctant to consider the argument that the evidence was not sufficient to sustain the verdict of the jury. But, when such complaint is considered along with other matters set forth, it tends to have some bearing on the results. This defendant was not stopped because his vehicle was being driven in an erratic manner. Nor was there any testimony that the defendant had the ordinary symptoms shown by one under the influence of intoxicants, except "speech and attitude." The troopers all testified that defendant's clothing was not in disarray, nor that his conduct was unusual except that he became antagonistic, and his speech was slurred.[4] One of the symptoms of exposure to small amounts of carbon monoxide —as defendant contended was his problem —is the speech difficulty encountered. Lawyers' Medical Cyclopedia, ibid, § 24.17, states with reference to small amounts of carbon monoxide: "* * * speech difficulty (may act like drunk)." Defendant's antagonistic attitude, according to the record, developed while he was in the trooper's car when they were trying to ascertain what disposition was to be made of defendant's wife and children, since the wife could not drive and had no driver's license. Such attitude is easily understood, under the circumstances. No man wants to leave his wife and children, at night, in a strange town. Admittedly arrangements were made to deliver defendant's wife and children to their home, but his antagonistic attitude developed before those arrangements were worked out—as the testimony reveals.

■ Consequently, as this writer views the entire record the State failed to prove the charge "beyond a reasonable doubt" notwithstanding the jury's verdict. Even with the prosecutor's unproved statements of alleged fact; his statements outside the scope of testimony; and considering the unusual circumstances preceding defendant's trial; we observe that the punishment assessed by the jury was the minimum allowed by law. Without the inperceptible forces alleged by defendant, we doubt that the jury would have returned the guilty verdict.

■ We readily admit the accuracy of all the citations offered by the State's brief: that the jury determines the facts, and that this Court will not interfere with

4. See: Vehicle Traffic Law, E. C. Fisher, The Traffic Institute Northwestern University, 1961, p. 288, wherein it states:

"The range of circumstantial evidence in such cases covers a wide variety of acts, circumstances, and conditions. The "mouthings" of an inebriated defendant may be used to indicate his condition, as where be curses and uses vile language. The prosecution may show defendant's unusual actions, his erratic manner of driving or walking, having the odor of liquor on his breath, his admissions of having recently drunk intoxicants, talking incoherently, violation of traffic regulations, being involved in collisions, having an intoxicated passenger with him in his car, having recently been in a tavern or other place where liquor was being served, and a host of other factors which tend to support the conclusion that he was under the influence of intoxicants.

His refusal to submit to a chemical test of his breath, blood, or bodily fluids has been held admissible as being in the nature of an admission that his state of sobriety will not bear investigation.

However, conclusions based upon pathological symptoms such as the foregoing might be fallacious due to the fact that these sometimes indicate a condition other than that produced by alcohol. Science has provided the means of taking the guesswork out of the matter, and chemical tests to determine the actual blood-alcohol content offer the only really reliable, accurate, and dependable evidence as to the cause of an impaired physical or mental condition adversely affecting driving ability as it is observed in a person. Tests have been developed, also, whereby narcotic addiction may be discovered by detecting the presence of opiates in the human system."

that determination when the evidence is merely conflicting. However, this Court also has the duty to review the record of trial and when it appears that notwithstanding the conflict of testimony and evidence, the proof of a charge is not proved "beyond a reasonable doubt." And it appears that the verdict resulted from improper testimony and argument by the prosecutor, this Court has the duty to exercise that power authorized by statute, to correct the judgment and sentence.

We are therefore of the opinion, after considering the record before the Court in its entirety, that defendant's propositions of error are well taken and that the judgment and sentence imposed herein should be reversed. It is therefore ordered that the judgment and sentence imposed in McClain County Court case number 6955, on December 11, 1967, is reversed and remanded with instructions to dismiss the charge against the defendant.

NIX, J., concurs.

BUSSEY, J., dissents.