STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ANDREW PERRY, DEFENDANT-APPELLANT.

Argued March 5, 1974—Decided May 7, 1974.

*Mr. Anthony M. Mahoney,* designated counsel, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Mahoney,* of counsel and on the brief).

*Mr. Kenneth P. Ply,* Assistant Prosecutor of Essex County, argued the cause for plaintiff-respondent (*Mr. Joseph P. Lordi,* Prosecutor of Essex County, attorney; *Mr. Ply,* of counsel and on the brief).

PER CURIAM. We affirm essentially for the reasons stated in the opinion of the Appellate Division, 128 *N. J. Super.* 188 (1973). We feel compelled, however, to add some additional comments in view of the observations made by the dissent.

The basic and only objection of the dissent to the prosecutor's summation is that "the jury was called upon to confront the larger issue of police corruption in general and, by its verdict, to redress the injustices visited by society upon the disadvantaged." This criticism is allegedly predicated upon the two references in the closing statements:

All the Willie Lee Joneses of the world are on trial here and not only Andrew Perry. All the Willie Lee Joneses. And you by your verdict will say whether or not the Willie Lee Joneses of the world are going to be given a fair shake or whether or not the Willie Lee Joneses of this world are going to be subjected to not only being arrested for whatever crime they may have committed but whether or not they are going to be subjected to further arrest after that and whether or not because of the position in which they find themselves in the Willie Lee Joneses of this world are going to have to pay through the nose to everybody. That has got to stop, ladies and gentlemen. It has got to stop.

\*  \*  \*  \*  \*  \*  \*  \*

I'm asking you now that after you listen to His Honor's charge come back with a verdict of guilty relative to Mr. Perry. I'm telling you to come back and tell Mr. Perry and every other dishonest cop, and there are some unfortunately, no we are sick and tired, we the public who really make up the laws, and that he in that capacity is charged with enforcing the laws, that we are sick and tired of the Willie Lee Joneses in this world being taken advantage of, the Willie Lee Joneses in this world who have enough of their own problems, that they need our help and that we are sick and tired of making more problems for them. Thank you very much.

And it is not wholly without significance that defense counsel was silent at this point in the summation. There was no objection.

The prosecutor justifies these observations on the basis of a response to defense counsel's summation:

And now, of course, the State's star witness, Willie Lee Jones. You noticed I made short life of Mr. Jones, no knit picking necessary there . . . Why should I sit there and ask him any more questions? . . . Why even dignify his appearance in this case by making him think that he was an important witness? I didn't want to hear anything from this man, and I'll tell you why. He was the convicted narcotics dealer . . . He stood trial before a judge and a jury and then they didn't believe a word he said and found him guilty.

A careful reading of the entire defense summation reveals a sprinkling of many heavy handed statements concerning Willie Lee Jones — comments, we might add, which were well within the rights of defense counsel. Both the prosecutor and the defendant are allowed wide latitude in summation, *State v. Bogen*, 13 *N. J.* 137, 140 (1953), but

are confined to the facts in evidence and the reasonable inferences which may be drawn therefrom. *State v. Hill,* 47 *N. J.* 490, 499 (1966). Appraised against the background of the trial, the whole summation and the judge's charge, the passages complained of did not vitiate the fairness of the trial.

The fact is that a police officer was on trial for attempted extortion. And the fact is that the victim of the extortion was a convicted possessor of narcotics and described in summation by defendant's counsel as a convicted narcotics dealer. The issue of police corruption and its potential in dealing with the general class of lawbreaker such as a Willie Lee Jones was squarely before the Court in this trial. Within reasonable limitations, the prosecutor should be permitted to observe the serious social consequences of the crime charged. But it is always necessary that the jury, as in this case, is clearly instructed that its verdict must be based on the evidence. *State v. Knight,* 63 *N. J.* 187, 193–194 (1973); *State v. Capano,* 125 *N. J. Super.* 383 (App. Div. 1973); *United States v. Ramos,* 268 *F. 2d* 878, 880 (2d Cir. 1959).

In light of the foregoing, it was reasonable for the prosecutor to retort to the statements of defense counsel. There was no error and certainly no prejudicial error. In *State v. Johnson,* 31 *N. J.* 489, 510–511 (1960), Justice Proctor said for a unanimous Court:

> The prosecutor is entitled to sum up the State's case graphically and forcefully. It is unreasonable to expect that criminal trials will be conducted without some show of feeling. Defense counsel traditionally make dramatic appeals to the emotions of the jury. In these circumstances, a prosecutor cannot be expected to present the State's case in a manner appropriate to a lecture hall.

See also *State v. Smith,* 27 *N. J.* 433 (1958); *State v. Ordog,* 45 *N. J.* 347 (1965). Our dissenting colleague relies upon the dissent in *United States v. Antonelli Fireworks Co.,* 155 *F. 2d* 631 (2d Cir. 1946). The Court therein affirmed a conviction predicated on a summation which was

far more emotional and questionable than that under discussion herein. The closing arguments to the jury were delivered on June 8, 1944, soon after the American invasion of Normandy. The defendants were being tried on charges of conspiracy to defraud the United States Government in its prosecution of the war by defective production of bombs and grenades. In this climate, the government attorney summed up and said:

I cherish an overwhelming confidence * * * in the belief that * * * *you will render a verdict of which you can be proudly justified in the presence of your fellowmen,* those here at home who labor and have labored unceasingly in an honest effort to manufacture munitions of war as well *as those of us beyond the seas who look to us for the things they need to sustain them in their hour of extreme sacrifice.* (Emphasis added) (155 *F.* 2d at 637).

Such statements were not deemed prejudicial in the context of that trial.[1]

The cases are legion wherein appellate courts have considered remarks in summation resulting in affirmances and reversals of trials. Each case must be evaluated in the factual context presented or one clearly akin to it. Therefore, the legal authorities relied upon by the dissent to support the position that "reference to the social setting of a trial has not infrequently given rise to a judgment of prejudicial error" must be examined in that light.

In *Viereck v. United States,* 318 *U. S.* 236, 63 S. Ct. 561, 87 *L. Ed.* 734 (1943), the Court held that the indictment did not substantially allege offenses condemned by the statute and remanded the matter. By way of further observations as to guidelines for the trial judge, the United States

---

[1]The majority in *Antonelli* consisted of the very eminent Judges Learned Hand and Clark. The dissent was written by the equally learned Judge Jerome Frank.

Supreme Court directed attention to conduct of the prosecuting attorney. The Court said:

> * * * In his closing remarks to the jury he indulged in an appeal wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only have been to arouse passion and prejudice.[3]

> "This is war. It is a fight to the death. The American people are relying upon you ladies and gentlemen for their protection against this sort of a crime, just as much as they are relying upon the protection of the men who man the guns in Bataan Peninsula, and everywhere else. They are relying upon you ladies and gentlemen for their protection. We are at war. You have a duty to perform here.
> "As a representative of your Government I am calling upon every one of you to do your duty." (318 *U. S.* at 247, 63 S. Ct. at 566, 87 *L. Ed.* at 741).

In *Greenberg v. United States,* 280 *F.* *2d* 472 (1 Cir. 1960), the court said:

> The United States attorney commenced his final argument by informing the jury that he was "a sort of thirteenth juror [who] applies his training in the evaluation of evidence, in analyzing evidence, and tries to convey to the jury just what part the evidence plays in the presentation of a case" (a description we find quite inappropriate, since counsel, unlike a juror, is not required to be impartial). Near the end of his argument the United States attorney sought to put this self-appointment to use. In vigorous language he expressed his personal opinion of the trustworthiness of the government's evidence and the consequent guilt of the accused. Upon objection interposed, the court ruled in the presence of the jury that the prosecutor had a right to argue "his belief in the evidence." Counsel continued, and the court overruled a second objection, but expressed a caution. The argument was then repeated. (280 *F.* *2d* at 474).
> *      *      *      *      *      *      *      *
> Where would this leave a criminal defendant who is entitled to representation, but whose counsel does not believe in his innocence? Must his counsel nevertheless assert such a belief in order to counter

---

[3]"In closing, let me remind you, ladies and gentlemen, that this is war. This is war, harsh, cruel, murderous war. There are those who, right at this very moment, are plotting your death and·my death; plotting our death and the death of our families because we have committed no other crime than that we do not agree with their ideas of persecution and concentration camps.

the expressed opinion of government counsel, or does such a defendant have an unrefuted witness against him, in the form of the\prosecuting attorney? Or should a prosecutor be permitted to argue, for example, "Members of the jury, I tell you that in my opinion trained to examine evidence this defendant is guilty as hell. I know it; he knows it. Even his own counsel knows it. Oh yes, his counsel asked you to find him not guilty. But I notice that not once did he suggest to you that he had even a shadow of belief in his client's innocence. Why didn't he? Because his conscience wouldn't permit him to. Even his own lawyer doesn't think he is innocent, but he wants you * * *" etc., etc. That is not the argument made in this case, but we see no stopping point except the one stated in the canon. (280 *F. 2d* at 475, n. 3).

In *Brown v. United States,* 125 *U. S.* App. D. C. 220, 370 *F. 2d* 242 (D. C. Cir. 1966), which involved the confrontation of a Negro youth and two police officers, the court said:

* * * Focusing on this, the prosecutor warned the jury that to acquit appellant would leave the police powerless to protect against such behavior short of resort to martial law.[11]

In *United States v. Fullmer,* 457 *F. 2d* 447 (7 Cir. 1972), the defendant was a licensed firearms dealer who was charged with conducting business of a firearms dealer on premises not licensed to him. The court said:

The prosecutor told the jury "We have filed the case here under the Gun Control Act of 1968, which was passed by Congress to provide support for Federal, State and local enforcement agencies and officials in their fight against crime and violence . . ." An objection by defendant's counsel was overruled by the Court.

Also, the prosecutor stated "I don't have to tell you ladies and gentlemen, what is happening today in our country with people — not the man who shoots his wife or that kind — but people who are using ammunition and guns for sniping and creating disturbances, -and so forth." Again, an objection by defendant's counsel was overruled by the trial court. (457 *F. 2d* at 449).

---

[11]"But no matter how you twist it, no matter how you turn it, and no matter how you argue, the fact comes out that the defendant assaulted, opposed and impeded this police officer who was acting in the District of Columbia in the performance of his duties, and without any justifiable and excusable cause, whatsoever. * * *" (370 *F. 2d* at 246).

In *State v. Perry,* 274 *Minn.* 1, 142 *N. W. 2d* 573 (1966), the prosecutor referred to the fact that defendant was given a lie detector test. This was held to be reversible error.

At the close of the argument counsel for defendant stated:
"* * * [D]efendant objects to the portion of the State's argument as prejudicial * * *. * * * 'None of us are safe until we take care of those who maraud, murder, kill, and steal.' * * * 'Perry and Goben lead a life different from us, a life of crime' * * *. * * * 'He is the type of person that prowls at night,' * * *. 'He is not a Class A citizen deserving of any consideration by you jurors,' * * * 'You have him in the palm of your hand now.' * * * 'You now have that person in the palm of your hand,' and, further, that this is all somehow a spending of tax money, and that, without a conviction, the taxpayer's money is going to be wasted. * * * If you want to keep St. Paul safe for yourselves and your relatives, you want to keep your property safe, and if you want to go to sleep at night * * * you must convict Perry, or he will return to these practices.' * * * 'If you want to keep St. Paul and Ramsey County safe, you must convict Perry.' " (142 *N. W. 2d* at 579–580).

In *People v. Moore,* 26 *A. D. 2d* 902, 274 *N. Y. S. 2d* 518 (App. Div. 1966), the District Attorney improperly commented upon defendant's silence when told of charges against him and, upon defendant being a recipient of welfare, saying:

* * * "Again, we start off with our superior fellow, Leon Moore; his wife tells us * * * that they are on welfare, and maybe he wanted to supplement that welfare allowance a little bit by a little extra curricular activity. So, he goes down to the corner of Michigan and William with his gun * * *." The District Attorney also exceeded proper limits in telling the jury that if they wanted to live in a community where crime runs rampant they should acquit the defendant. (274 *N. Y. S. 2d* at 519).

In *Seely v. State,* 471 *P. 2d* 931 (Okl. Cr. 1970), the court said:

Defendant complains in his brief that in his argument to the jury the prosecutor went outside the record in such a manner as to arouse the passions of the jurors, which thereby prejudiced his trial. In the same connection, we observe that the prosecutor stated in his cross-examination of defendant, "Don't you know, *as a matter of fact,*

that where a person drinks wine to the extent that they're under the influence of the liquor that every [time] they take a drink of water that it brings the whole thing back again?" It appears that the prosecutor was subtly offering testimony concerning what effect champagne had upon a person. This appears especially pertinent insofar as the prosecutor stated the question in a manner, as being a "matter of fact." In his closing argument the prosecutor argued further, "Now there's no testimony here as to the potency of champagne and personally, I'm thankful that I don't know except what I've been told * * *. But I do know this, and this was brought out in this evidence this morning, that where a person imbibes sufficient wine, champagne or what not, to become under the influence of it, that is a lasting effect, that every time you take a drink of water it brings on an acceleration of a condition."

Our research fails to verify the prosecutor's contention concerning either the potency of champagne, or his statement with relation to the subsequent drinking of water bringing on an acceleration of intoxicated condition. In fact, the opposite of both statements is reflected by the references considered by the Court. (Emphasis original) (471 *P. 2d* at 933).

Surely, the episodes reported above comprise no basis for the conclusion of the dissent that prosecutorial excess requires a reversal in the case at hand. If anything, the majority of cases do not subscribe to this conclusion. In *United States v. Ramos,* 268 *F. 2d* 878 (2 Cir. 1959), the court said:

The appellant contends that a fair trial was prevented by inflammatory comments by the prosecutor in his summation. We do not agree. It is true that the prosecutor, in the course of his summation, referred to traffic in narcotics as "a dirty business," a "vicious business," a "sneaky business," and as "a vicious racket," and referred to the purchase price of three ounces of heroin as "representing $1.265 worth of human degradation." But the comments complained of comprised only six lines (in the typed transcript) interspersed throughout a 24 page summation the rest of which was devoted to a thorough review of the facts and fair argument thereon. *Moreover, the context suggests that several of the comments were obviously made to mitigate prejudice against the Government for its use, in the prosecution of the case, of informers and undercover men whose credibility had been savagely attacked by the defense.* (Emphasis added) (268 *F. 2d* at 880).

So too, it must be noted that this Court in *State v. DiPaglia,* 64 *N. J.* 288 (1974), affirmed a conviction wherein more

serious questions were raised as to the State's summation. The dissent was vigorous. The prosecutor's statements were a far cry from those we are now considering. *DiPaglia,* at 299–303.

As the dissent properly indicates, the trial court did not address the problem in any fashion because no objection was made. The flavor of the remarks at the time of the alleged error can better be tasted by noting that not only was there no objection, but the transcript reveals that the second objectionable comment was the actual closing remark in the State's summation after which the following took place:

MR. MAURER: Your Honor, may we take a recess, please.
THE COURT: Yes, I was going to take a break. You'll be excused, ladies and gentlemen, for a few minutes and then I will charge you.
(A short recess is taken)

Defense counsel did not voice disapproval and was not pressed for time. He had a recess within which to evaluate any further objections or make any requests of the trial judge. Apparently, the atmosphere and the words did not concern him at that time. *State v. Macon,* 57 *N. J.* 325, 333 (1971).

It should be noted that the comments comprised an insignificant portion of a summation which was devoted to a fair review of the evidence. We further hold that these comments were not of such magnitude as to rise to the level of plain error. *R.* 2:10–2. To require a rerun of this trial because of the statements complained of would be an advantage to which the defendant is not entitled. Under the circumstances in this case, the alleged error must be regarded as inconsequential and clearly incapable of producing an unjust result.

Judgment affirmed.

CLIFFORD, J. (dissenting). As presented to the jury this case was a close one on its facts. The assistant prosecutor who argued before us candidly acknowledged as much. Our law attaches great significance to this feature of the case. The closeness affects the prosecutor's obligation, the general nature of which I recently had occasion to review in my dissenting opinion in *State v. DiPaglia,* 64 *N. J.* 288, 298 (1974), raising his duty to a level requiring particular circumspection scrupulously to avoid improper conduct resulting in the unjust conviction of a defendant. See *Berger v. United States,* 295 *U. S.* 78, 88, 55 S. Ct. 629, 633, 79 *L. Ed.* 1314, 1321 (1935); *United States v. Arendale,* 444 *F.* 2d 1260, 1269 (5 Cir. 1971); *State v. Bogen,* 13 *N. J.* 137, 141, *cert.* den., *Lieberman v. State,* 346 *U. S.* 825, 74 S. Ct. 44, 98 *L. Ed.* 350 (1953); *People v. Evans,* 39 *Cal.* 2d 242, 246 *P.* 2d 636, 642 (Sup. Ct. in Bank 1952); *People v. Freedman,* 4 *Ill.* 2d 414, 123 *N. E.* 2d 317, 321 (Sup. Ct. 1954); Vess, "Walking a Tightrope: A Survey of Limitations on the Prosecutor's Closing Argument," 64 *J. Crim. L. & C.* 22, 54 (1973). See also Note, "The Nature and Consequences of Forensic Misconduct in the Prosecution of a Criminal Case," 54 *Colum. L. Rev.* 946, 970 (1954). This is especially true in a case where the testimony is in sharp conflict and the result ultimately turns on questions of credibility, as in this trial. See *United States v. Antonelli Fireworks Co.,* 155 *F.* 2d 631, 654 (2 Cir.) (Frank, J. dissenting), *cert.* den., 329 *U. S.* 742, 67 S. Ct. 49, 91 *L. Ed.* 640 (1946); *State v. D'Ippolito,* 19 *N. J.* 540, 547 (1955); *State v. Welsch,* 29 *N. J.* 152, 158 (1959); *People v. Jackson,* 40 *A. D.* 2d 1006, 338 *N. Y. S.* 2d 760 (App. Div. 1972). For the second time this term I am emboldened to disagree with the majority's opinion of the prosecutor's remarks in summation and their effect on the result.

Defendant was a police officer of the City of Newark. He was charged with attempted extortion from one Willie Lee Jones in violation of *N. J. S. A.* 2A:105–1 and *N. J. S. A.* 2A:85–5. The prosecutor's summation included the remarks

quoted in full in the majority opinion. In defense thereof the State says it was simply answering defense counsel's summation wherein the complaining witness, Jones, was characterized as a convicted criminal bearing a grudge against the man who arrested him and whose sworn testimony was unworthy of belief against that of an officer of the law. The State's brief asserts that "the prosecutor simply argued to the jury that if they believed Jones' story and the rest of the State's case sufficient to prove Perry's guilt beyond a reasonable doubt, they should not fail to convict on the basis that a convicted criminal like Jones was disentitled to the protection of the laws which govern society."

If that were all there were to it, I would not be troubled by the excerpts from summation quoted by the majority. But I perceive those remarks as going much farther and expanding the issues for which defendant was on trial beyond those included in the indictment. Now the jury was called upon to confront the larger issue of police corruption in general and, by its verdict, to redress the injustices visited by society upon the disadvantaged. This entreaty was wrong, and plainly so.

Reference to the social setting of a trial has not infrequently given rise to a finding of prejudicial error. Singer, "Forensic Misconduct by Federal Prosecutors — and How it Grew," 20 *Ala L. Rev.* 227, 256 (1968). See, *e. g.*, *Viereck v. United States*, 318 *U. S.* 236, 63 S. Ct. 561, 87 *L. Ed.* 734 (1943) (references to the war and those who would destroy us); *Greenberg v. United States*, 280 *F.* 2d 472 (1 Cir. 1960) (charge of unpatriotism in a tax evasion case); *Brown v. United States*, 125 U. S. App. D. C. 220, 370 *F.* 2d 242 (D. C. Cir. 1966) (acquittal would leave police powerless short of martial law); *United States v. Fullmer*, 457 *F.* 2d 447 (7 Cir. 1972) (references to gun control and fight against crime and violence); *State v. Perry*, 274 *Minn.* 1, 142 *N. W.* 2d 573 (Sup. Ct. 1966) (references to monetary cost to taxpayers and safety in community); *People v.*

*Moore,* 26 *A. D.* 2d 902, 274 *N. Y. S.* 2d 518 (App. Div. 1966) (acquit defendant if you want to live in a community where crime runs rampant) ; *Seely v. State,* 471 *P.* 2d 931 (Okl. Cr. 1970) (reference to great number of deaths on highway in a drunk driving case). See also Vess, *supra,* 64 *J. Crim. L. & C.* at 50. Given the extremely close case presented to the jury here, reference to the broader issue could only be prejudicial to defendant.[1]

The ABA Prosecution Function Standards explicitly proscribe the comments of the prosecutor in this case. According to Standard § 5.8 (d) :

"The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under controlling law, or by making predictions of the consequences of the jury's verdict."

ABA Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution Function (Approved Draft, 1971).

The majority takes the position that at Perry's trial "[t]he issue of police corruption and its potential in dealing with the general class of law breaker such as Willie Lee Jones was squarely before the Court * * *." If so, I suggest it should not have been, and it was intruded there precisely

---

[1]With respect to whatever comfort my colleagues derive from *United States v. Antonelli Fireworks Co.,* 155 *F.* 2d 631 (2 Cir.), *cert.* den., 329 *U. S.* 742, 67 S. Ct. 49, 91 *L. Ed.* 640 (1946), I can only express the expectation (and this with no sense of diminished respect for the distinguished judges who there comprised the majority) that were a case with similar facts to appear before this Court today, some twenty-eight years after *Antonelli,* we would reach a contrary result. But apart from that fond hope, note particularly that the decision in *Antonelli* rests in part on the conclusion of the majority of that court that the trial judge had applied extensive corrective measures and had given a swift and sure rebuke, deflating immediately the very words of the prosecutor which the majority opinion herein recites. It is for this reason, in some considerable measure, that Judge Clark deemed the *Antonelli* prosecutor's concluding sentence in summation, which he termed "ill advised and overzealous," 155 *F.* 2d at 638, not prejudicial in the context of that trial.

because of the prosecutor's excessive zeal. What should have been before the trial court was the issue of whether Andrew Perry committed the attempted extortion with which he was charged — no less, certainly, but just as certainly no more. Police corruption was not properly on trial, and all the Willie Lee Joneses of the world were not properly on trial. Only Andrew Perry was on trial — or should have been — for the offense set forth in the indictment. See *State v. Kenny,* 128 *N. J. Super.* 94 (App. Div. 1974) (alternative holding).

Justification for broadening the issues to include police corruption and "a fair shake" for the world's downtrodden is found by the majority in the necessity for the prosecutor to respond to defense counsel's attempts at impeachment of the credibility of the State's chief witness. If this is to be the rule, the door to expanding the issues beyond guilt or innocence is wide open to prosecutors in every trial, since the credibility of the prosecution's witness is invariably at issue in a criminal case.

The Court relies on *State v. Knight,* 63 *N. J.* 187, 193–194 (1973) to support the position that "[w]ithin reasonable limitations, the prosecutor should be permitted to observe the serious social consequences of the crime charged as long as the jury, as in this case, is clearly instructed that its verdict must be based on the evidence." At the outset I differ with the suggestion that the repeated infractions in this case fall within "reasonable limitations" required by the opinion in *Knight.* Moreover, I disagree with the conclusion that the customary instruction that the jury should render a verdict "on the evidence" given in every trial is sufficient to cure the prejudice to the defendant. Note especially the clear and explicit instructions in *State v. Smith,* 27 *N. J.* 433, 461 (1958), *cert.* den., 361 *U. S.* 861, 80 S. Ct. 120, 4 *L. Ed.* 2d 103 (1959); *State v. Ordog,* 45 *N. J.* 347, 366 (1965), *cert.* den., 384 *U. S.* 1022, 86 S. Ct. 1942, 16 *L. Ed.* 2d 1025 (1966).

I too am troubled, along with the majority, by defense counsel's failure to object to the serious transgressions recited above (although I do not attach much significance to his perfectly understandable request for a recess after conclusion of summations; I venture to say that a recess at this point in the trial, for a variety of obvious reasons, is almost routine). But I fail to see how this supports the Court's discovery of an inference that within the context of this trial any error was of no moment.

Anyone familiar with courtroom procedures is sensitive to many considerations, tactical and otherwise, on account of which an attorney may knowingly refrain from objecting to improper comments by the prosecutor. The most apparent reason is that to do so frequently serves only to impress the prejudice of the comment more deeply into the jurors' minds by again drawing attention to it. *Garris v. United States,* 129 U. S. App. D. C. 96, 390 *F.* 2d 862, 865 (D. C. Cir. 1968); *United States v. Grunberger,* 431 *F.* 2d 1062, 1068–1069 (2 Cir. 1970). See also Judge Jerome Frank's observation in *United States v. Grayson,* 166 *F.* 2d 863, 871 (2 Cir. 1948) (concurring):

[A]s experienced trial lawyers have often observed, merely to raise an objection to such testimony — and more, to have the judge tell the jury to ignore it — often serves but to rub it in. I believe that a prosecutor ought not deliberately and repeatedly, as here, put defendant's lawyer in such an awkward dilemma — where his client will suffer if the lawyer does not object or if he does. If, without attaching any practical consequences to such tactics of the prosecutor, we simply express disapproval of them, we do nothing to prevent their repetition * * *.

I hasten to add that the defense attorney who fails to object and give the court an opportunity to correct the error quite properly incurs the burden of establishing "plain error" on appellate review under *R.* 2:10–2. However, I question both the fairness and reasonableness of applying in this case any rule by which counsel is further penalized for failure to object, whether for tactical or other reasons, by the imposi-

tion of an additional inference that that failure implies a lack of moment in the error.

The potential for prejudice is at least as apparent here as it is in *State v. Spano,* 64 *N. J.* 566 (1974), decided this day by a unanimous court. There the prosecutor's improper and gratuitious observation that defendant could have testified before the grand jury is held to be sufficient, standing alone, to warrant a reversal of the conviction. Not only was there no objection in that case, there was what amounted to a concession by defense counsel that the prosecutor's flagrant misstatement of the law was in fact correct. And there was absolutely no interference or attempted curative instruction by the trial judge. I am unable to perceive how the comment in *Spano,* nowhere characterized as a close case, can be looked upon as "prejudicial," "obvious error," "unfair[ness]," "excessive," "simply inexcusable," and "definitely of * * * constitutional dimension," while the statements here are viewed as "inconsequential."

Judge Frank, to whose splendid dissenting opinion in *United States v. Antonelli Fireworks Co., supra,* I had occasion to refer in my dissenting opinion in *DiPaglia,* there takes notice of the ancient observation, "If you want to excite prejudice you must do so at the close, so that the jurors may more easily remember what you said." *Id.* 155 *F.* 2d at 642, quoting *Aristotle, Rhetoric,* Book III, Chap. 14. I submit that there has been demonstrated the possibility of prejudice to the defendant in this tenuous case being excited by the prosecutor's reference in summation to issues outside the indictment. I would therefore reverse the Appellate Division's affirmance of the judgment of conviction and remand for a new trial.

*For affirmance*—Chief Justice HUGHES and Justices JACOBS, MOUNTAIN, SULLIVAN and PASHMAN—5.

*For reversal and remandment*—Justice CLIFFORD—1.