**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3675-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KHIRY J. WALKER,

     Defendant-Appellant.

_____

Submitted June 3, 2020 – Decided June 22, 2020

Before Judges Koblitz and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 12-12-1117.

Joseph E. Krakora, Public Defender, attorney for appellant (Angela Costigan, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Debra Grace Simms, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Khiry J. Walker appeals from the December 17, 2018 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. A jury convicted defendant of fourth-degree criminal trespass, N.J.S.A. 2C:18-3(a). Defendant contends his trial counsel erred by failing to object to the State's personal opinions expressed in its opening and summation, not meeting with him sufficiently before trial to discuss his case, and not filing a direct appeal. Because defendant demonstrated he asked for an appeal that was not filed, we reverse and allow defendant to file a belated notice of appeal.

Defendant and his co-defendant, Ryan A. Askins, were jointly charged with a July 2012 armed home invasion in a ten-count indictment. Defendant was charged with the following eight counts: attempted second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a) and N.J.S.A. 2C:15-1(a)(1); first-degree robbery, N.J.S.A. 2C:15-1(a)(1); second-degree burglary, N.J.S.A. 2C:18-2(a)(1); third-degree terroristic threats, N.J.S.A. 2C:12-3(b); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)[1]; third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); and second-degree possession of a

_____

[1] This count was dismissed by the prosecutor prior to trial.

A-3675-18T4

firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a). The jury found defendant guilty only of criminal trespass as a lesser-included offense of burglary.

More than three years after trial, in August 2017, defendant submitted a PCR petition. The court ordered an evidentiary hearing to determine whether defendant was denied his right to an appeal. After hearing testimony from defendant and trial counsel, the court denied defendant's PCR petition in its entirety.

I.

The State presented the following evidence at the 2014 trial. In July 2012, defendant's aunt, P.B., who was eight months pregnant, had a birthday party at her home. The party was attended by multiple family members, including defendant and her other nephew, Askins. Guests began to leave between 8:30 p.m. and 9:00 p.m., at which time P.B. also left to drive a guest home. Upon returning ten to fifteen minutes later, she saw defendant and Askins still sitting outside. She told them she was going to bed and asked them to leave. Defendant and Askins remained sitting for two minutes before leaving.

At about 1:00 a.m., P.B. was awakened by a knock on her front door. She looked through her window to see who was knocking but saw no one. She returned to bed, but not "even a minute" later, she heard knocking again, this

time from her back door.  The speaker at the door identified himself as her "Uncle Rock."  P.B. testified that although she was not expecting her uncle, he occasionally "check[ed] up on" her "at about that time."  P.B. opened the door and discovered two men dressed in black.  The men were wearing face masks with hoodies tightly tied around their faces to conceal their identities.

The men entered P.B.'s house, pointing guns at her and demanding money.  P.B. recognized the men's voices as defendant and Askins.  They all moved into P.B.'s bedroom, where her young grandson was sleeping.  Afraid for her grandson, P.B. began "struggling" and "fighting" with the men.

As P.B. "was punching" the men, they fought back and "hit[] [her] in [her] stomach."  She pulled off their masks and confirmed the assailants were defendant and Askins.  She testified that upon seeing their faces, she said aloud, "Oh, really, Ryan and Khiry."  P.B. fell to the ground, as did her grandson who fell off the bed.  Defendant and Askins asked P.B.'s grandson "where the money at" and as he was on the floor, defendant hit the child on his leg with a gun.

P.B called for her son, who was sleeping in the living room.  Askins hit P.B.'s son on the head with his gun, causing him to bleed and resulting in what P.B. described as "a small hole on the . . . top of his head, right in the center."  Without taking any property, defendant and Askins ran away.

Despite the injuries sustained by her son, and having been hit in her stomach while pregnant, P.B. did not call the police immediately after the incident. P.B. testified that she "was too upset and scared" to do so. She contacted the police the following day.

During the joint jury trial, neither defendant nor Askins testified. P.B., and two police officers testified on behalf of the State. P.B.'s grandson was also scheduled to testify, but he "shut down" prior to his testimony and refused to enter the courtroom. Both defendant and Askins were convicted only of fourth-degree trespassing.

Because by the end of trial defendant had been incarcerated beyond the maximum eighteen-month sentence for a fourth-degree crime, his trial counsel waived the preparation of a pre-sentence report. Defendant was sentenced the same day. Counsel and the court were concerned that defendant might have to spend more days in jail due to administrative sentence processing.[2] After the court advised defendant of his right to appeal, counsel unsuccessfully requested that defendant be immediately released on his own recognizance pending appeal.

On appeal, defendant raises the following issue:

---

[2] In fact, defendant testified at the PCR hearing that he remained incarcerated for an additional week.

I.  THE LOWER COURT ERRED IN FAILING TO FIND THAT DEFENSE COUNSEL WAS INEFFECTIVE.

A.      DEFICIENCY PRONG.

1.      TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO FILE A DIRECT APPEAL

2.      TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE PROSECUTOR'S OPENING AND SUMMATION

3.      TRIAL COUNSEL FAILED TO DISCUSS THE CASE AND MEET WITH HIS CLIENT PRIOR TO HIS TRIAL.

B.      PREJUDICE PRONG.

II.

We use a deferential standard of review when considering the appeal of a denial of PCR following an evidentiary hearing.  State v. Pierre, 223 N.J. 560, 576 (2015).  The factual findings made by a PCR court following such a hearing will be accepted if they are based on "sufficient credible evidence in the record." Ibid. (quoting State v. Nash, 212 N.J. 518, 540 (2013)).  Legal conclusions are reviewed de novo.  Ibid. (quoting Nash, 212 N.J. at 540-41).

A PCR petitioner must establish the grounds for "relief by a preponderance of the credible evidence."  State v. Goodwin, 173 N.J. 583, 593

(2002). To sustain that burden, the "petitioner must do more than make bald assertions that he [or she] was denied the effective assistance of counsel." State v. Porter, 216 N.J. 343, 355 (2013) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). Instead, the petitioner must allege and articulate specific facts that "demonstrate counsel's alleged substandard performance." Ibid. (quoting Cummings, 321 N.J. Super. at 170).

"[PCR] is neither a substitute for direct appeal, R. 3:22-3, nor an opportunity to relitigate cases already decided on the merits, R. 3:22-5." State v. Preciose, 129 N.J. 451, 459 (1992). Because all criminal defendants have the constitutional right to the assistance of counsel in their defense, defendants may bring a PCR claim for ineffective assistance of counsel. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10.

To reverse a conviction based on ineffective assistance of counsel, a defendant must demonstrate that: (1) "counsel's performance was deficient" and (2) counsel's "deficient performance prejudiced the defense . . . as to deprive the defendant of a fair trial." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey). To succeed on a claim for ineffective assistance of counsel, a defendant must establish both prongs of the Strickland test. Strickland, 466

7

U.S. at 687.  Under the first prong, counsel's representation must be objectively unreasonable.  Pierre, 223 N.J. at 578.  Under the second prong, a "reasonable probability [must exist] that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 583 (quoting Strickland, 466 U.S. at 694).

## III.

Defendant argues that his trial counsel's lack of sufficient pre-trial contact with defendant and failure to object to the State's personal opinions expressed in its opening and summation require reversal.  He takes issue with the following language from the State's opening:

> Imagine, if you will, that you're sleeping one night.  And, you hear a knock on your back door.  And, a person that you're familiar with saying who it is and asking to use the phone.

> And, this doesn't surprise you, you know this person.  So, you go to the back door, and you open up the back door.  But, when you open the back door, it's not this person that you know, it's two people, dressed in black, with their hoodies on, so you can only see their eyes. . . .

> Now you might think that this is part of a nightmare, that you're still sleeping, that this isn't real.

As to the summation, defendant argues that the State's repeated remarks to the jury to put themselves in P.B.'s situation were prejudicial.  He notes that

the State also improperly said that P.B. was "subjecting herself to ridicule, to thorough and extensive cross-examination, to alienation from her family. That's what she gets out of this."

"The scope of the State's opening statement is limited to the 'facts [it] intends in good faith to prove by competent evidence.'" State v. Wakefield, 190 N.J. 397, 442 (2007) (quoting State v. Hipplewith, 33 N.J. 300, 309 (1960)). Similarly, in summation, the State is "confined to the facts in evidence and the reasonable inferences which may be drawn therefrom." State v. Perry, 65 N.J. 45, 48 (1974). A State's misconduct will only be reversed, however, when "the misconduct was so egregious that it deprived defendant of a fair trial." Wakefield, 190 N.J. at 442-43 (quoting State v. DiFrisco, 137 N.J. 434, 474 (1994)).

To the extent the State's opening and summation went outside proper bounds, it did not constitute ineffective assistance of trial. The jury was instructed that "what the attorneys [said was] not . . . evidence."

Defendant also argues that his "trial counsel's failure to regularly meet with [him] was detrimental to the development of his case and defense." Defense counsel was a "pool" attorney retained by the Office of the Public Defender (OPD) to represent defendant. Defendant represents that,

although he sent the OPD a letter in January 2014, complaining of his counsel's failure to meet him and prepare for trial, the OPD refused to replace his attorney. Because counsel only met with him "through the window in jail," defendant asserts his counsel was not reasonably diligent and failed to ensure that he could make informed decisions. Defendant points to no way that this prejudiced his trial.

Our Supreme Court explained "that it is not the frequency of consultation that reveals whether a defendant has been effectively denied effective legal assistance. Rather, the proper inquiry is whether as a result of that consultation, counsel was able properly to investigate the case and develop a reasonable defense." State v. Savage, 120 N.J. 594, 617 (1990). As noted by the PCR court, given that "defendant was originally charged with a second[-]degree armed robbery, and was found guilty of fourth[-]degree trespassing," defendant's trial counsel "obtain[ed] a very good outcome." Counsel was not ineffective in his pre-trial or trial representation.

IV.

Contrary to the court's finding, however, defendant did demonstrate by a preponderance of the evidence that he sought an appeal, which was not pursued. Pursuant to Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000), prejudice may be

10

presumed from counsel's forfeiture of defendant's right to appeal. We therefore grant defendant the right to appeal.

The Supreme Court of the United States explained in Flores-Ortega "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." 528 U.S. at 477. Therefore, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. at 484; State v. Carson, 227 N.J. 353, 354-55 (2016) (summarily remanding the case, with the agreement of the State, and granting permission to defendant to file an appeal because defendant requested an appeal after trial and no appeal was filed); State v. Jones, 446 N.J. Super. 28, 32-34 (App. Div. 2016) (holding that the strength of appellate issues are irrelevant when determining whether to grant a defendant an appeal when his initial request was ignored).

The PCR court held an evidentiary hearing to determine whether defendant did in fact inform his counsel that he wanted to file a direct appeal. Defendant testified during the evidentiary hearing that he told his counsel to do so "off the record" in "an outburst," immediately after the verdict

was announced. The PCR court read into the record what it believed was the "outburst" defendant was referencing. It noted that upon counsel asking the court to advise defendant of his right to appeal, defendant exclaimed, "(Indiscernible) fucking find me guilty. No bro. How they fucking find me guilty on a fucking charge that a fourth[-]degree trespass, I wasn't even trespassing."

The PCR court acknowledged that because some of defendant's conversation with his counsel "was not discernible by the transcriber," it could not "say, with any certainty, what that conversation was, other than what was on the record," and found trial counsel's testimony that he could not remember whether he was specifically asked to appeal credible.

The PCR court determined that had counsel, "a competent and thorough attorney," been expressly informed by defendant that he wished to seek a direct appeal, counsel would have filed the "[forty-five] minutes to an hour" worth of "minimum . . . paperwork." If he had filled out the proper paperwork reflecting defendant wanted to appeal, it would be forwarded to the OPD to pursue that appeal. Counsel had no recollection of whether his client had asked for an appeal or not. He did not have access to his file and testified, referring to

defendant's claim that he had requested an appeal: "I don't dispute what he says. I don't have any recollection."

At the end of trial defendant angrily expressed his dissatisfaction with the verdict. Additionally, counsel asked that defendant be released on his own recognizance pending appeal. In spite of this evidence, the PCR court found that defense counsel's skill and experience weighed convincingly against the claim that defendant had sought an appeal. The court did not sufficiently consider that counsel could have made an error, as we all do from time to time. Counsel testified he obtained a "great result" for defendant. This result could have caused counsel with a "busy" practice to inadvertently overlook his client's wish to appeal. Or counsel could have processed the appeal and a glitch in the OPD caused the failure. Defendant's testimony that he asked his lawyer to appeal was not rebutted. His comments after the verdict and his attorney's request for release pending appeal support his testimony. Thus, the PCR court did not have "sufficient credible evidence in the record" to find that defendant did not seek an appeal. See Pierre, 223 N.J. at 576 (quoting Nash, 212 N.J. at 540-41).

A-3675-18T4

We reverse the decision denying defendant an appeal. Defendant has forty-five days from the date of this decision to file a notice of appeal of his conviction as within time. The transcript has already been ordered.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3675-18T4