**Donald Ray CORN, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–304.**

Court of Criminal Appeals of Oklahoma.

June 28, 1974.

Donald L. Grace and Bob G. Carpenter, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant Donald Ray Corn, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Grady County, Case No. CRF–73–62, for the offense of Assault and Battery with a Dangerous Weapon, After Former Conviction of a Felony. The jury fixed his pun-

ishment at four (4) years imprisonment, and from said judgment and sentence a timely appeal was been perfected to this Court.

The evidence reveals that defendant was involved in a barroom brawl on the evening of August 6, 1973, at the "81 Tavern" in Rush Springs. During the course of the fight, Nick Vasil received stab wounds in the lower back and a minor contusion on the head, presumably caused by a blow struck with a pool cue. At trial, the State introduced ten witnesses, most of whom were patrons in the bar at the time of the fracas. Their version of the event, omitting minor variations immaterial to this appeal, is as follows:

At approximately 11:30 p. m., eight persons were present in the "81 Tavern": Mr. and Mrs. Nick Vasil, Kenneth Dodd, Billy Crittenden, Jerry Gifford, Emmitt Trustee, and Tom Purtell, patrons, and Wilma Casey, the operator of the tavern. At that time defendant and his companion, Bobby Humphrey, came in, ordered a beer, and sat down in a booth. While defendant remained seated in the booth, Humphrey and Vasil played a game of pool. Humphrey and Gifford then began a second game. At this point words were exchanged, either between Corn, seated in the booth, and Vasil, seated with his back to the bar, or between Humphrey and Vasil. It was a matter of dispute at trial as to what was said and who spoke first. Corn and Humphrey came over to Vasil and an argument and scuffle ensued.

Again, testimony was conflicting as to whether Vasil began the fight by pushing and kicking the defendant, or whether Humphrey began the fight by attempting to hit Vasil with a pool cue. In any case, the testimony of the State's witnesses was to the effect that Corn stabbed Vasil in the back while Vasil and Humphrey wrestled with a pool cue. Vasil jumped over the bar, shouting, "Watch him, he's got a knife." Several of the other patrons then joined in the fracas in an attempt to protect Vasil. Various injuries were sustain-

ed, the most serious of which were stab wounds inflicted on Purtell by defendant. After defendant and Humphrey had fought their way out the door and into the parking lot, defendant remained by the door, taunting and threatening those inside. Shortly thereafter, Rush Springs Police Officer Sam Davis arrived. He testified that defendant came toward him with a pool cue in his hand and a knife in the other hand. Defendant did not respond to Davis' order to halt and drop the weapons until the officer had pulled his revolver. At that point Officer Davis arrested both Corn and Humphrey who was seated in a car in the parking lot. Davis identified State's Exhibit # 3 as the pocket knife which he took from defendant at the time of arrest, and also stated that it was smudged with what appeared at the time to be blood.

In addition to the eyewitnesses and police officers, the State presented Dr. David Oorey, who examined Vasil after the incident. He described Vasil's wounds, and stated that they could have been serious, or fatal, if they had penetrated even an inch further.

Defendant's only witness in chief was Bobby Humphrey, who testified that Vasil and the other patrons in the bar had provoked the fight, and that he and defendant had only fought back in an effort to make it out the door. He claimed that State's Exhibit # 3, the knife taken from defendant by Officer Davis following the incident, was his and had never left his pocket the entire evening. On cross-examination Humphrey admitted that he had been previously convicted of a crime against nature.

In rebuttal, the State introduced Assistant District Attorney Fred Kramer, who testified that he had interviewed Humphrey a few days after the incident. At that time, contrary to his testimony at trial concerning the knife, Humphrey claimed the knife belonged to Corn and that he "didn't know the old man [Corn] had a knife or he would never have gone in there." Officer Davis also testified in rebuttal. He again identified State's Exhibit # 3 as the knife he had taken from defendant at the time of arrest. He also testified that he had presented defendant with a choice of three knives, and defendant had identified State's Exhibit # 3 as belonging to him.

After the State rested, defendant introduced in rebuttal Mr. Bud Branan, Humphrey's landlord. Brannan testified that he had given the knife to Humphrey, and was sure that State's Exhibit # 3 was the same knife because it had the word "Case" scratched on it. The State then pointed out on cross-examination that State's Exhibit # 3 did not have the word "Case" on it, and instead, had the words "Uncle Henry" written on it. Nevertheless, Brannan reiterated that it was the same knife.

The case was then submitted to the jury, which returned a verdict of guilty of Assault with a Dangerous Weapon. In the second stage of the trial, dealing with punishment After Former Conviction of a Felony, defendant stipulated to prior convictions for Robbery by Force, Assault with Intent to Kill, Auto Larceny, Forgery, and two charges of Forgery in the Second Degree. The jury, thereupon, imposed a term of four (4) years imprisonment.

In his first assignment of error, defendant alleges error in certain closing remarks of the prosecuting attorney. In discussing the knife which Officer Sam Davis had taken from defendant at the time of his arrest, the prosecutor said the following:

"DISTRICT ATTORNEY: . . . This was taken by the police officer from Mr. Corn that night at that time and with traces of blood on it as—

"MR. GRACE (DEFENSE ATTORNEY): Your Honor, we are going to object to that. There has been no showing there were traces of blood on that knife.

"THE COURT: Approach the bench, please.

(Off the record discussion)

"THE COURT: The jury will understand this is the attorney's version of what happened. I will overrule the objection.

"DISTRICT ATTORNEY: I believe the officer did say it appeared to be blood. Anyway, it was on the knife . . . ."

Thus, it appears that defense counsel did make objection to the remarks, but did not move that they be stricken and the jury instructed not to consider them. In Haywood v. State, Okl.Cr., 509 P.2d 173 (1973), we stated:

". . . Counsel for defendant must not only object to improper statements of county attorney in argument to the jury, but must go further and move the court to exclude such remarks from the jury and instruct them not to consider the remarks for any purpose unless they were of such character than [sic] the error would not be cured by their withdrawal. Byrnes v. State, Okl.Cr., 451 P.2d 19 (1969). See also Walters v. State, Okl.Cr., 455 P.2d 702 (1969); Seely v. State, Okl.Cr., 471 P.2d 931 (1970)."

Defendant asserts that he did not move to exclude the remarks because he felt the error "could not be cured by such manner." [sic] We disagree, and find that defendant has waived his right to raise this issue on appeal.

In his second assignment of error, defendant claims that the sentence imposed by the jury was excessive. In this regard, we note that the four year sentence imposed was well within the statutory maximum and was well below the punishment requested by the prosecutor. See 21 O.S. 1971, §§ 51, 645. This, considering the aggravated nature of the offense and defendant's prior convictions, indicates that the jury was not motivated by passion and prejudice in rendering the sentence. We find defendant's second assignment of error to be without merit.

In his third assignment of error, defendant claims that he was prejudiced by that part of Dr. David Oorey's testimony wherein he stated that Nick Vasil's wound might have been fatal had it penetrated deeper into his back. As defendant cites no authority in support of this proposition, and we find that he has been deprived of no fundamental right, this assignment of error is also without merit. In Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969), we stated:

". . . It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citation of authority. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred. See Collins v. State, Okl.Cr., 407 P.2d 609."

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.